HUTCHINS, et al. *v.* BOARD OF SUPERVISORS OF ALCORN COUNTY, MISS.

No. 40112 April 23, 1956 87 So. 2d 54

768

*Wm. L. Sharp,* Corinth, for appellants.

*W. C. Sweat,* Corinth, for appellee.

KYLE, J.

This case is before us on appeal by W. V. Hutchins and others, taxpayers, from a decree of the Chancery Court of Alcorn County validating $80,000 of Alcorn County, Mississippi, road bonds authorized to be issued by the board of supervisors of said county for the purpose of constructing, repairing and/or rebuilding roads and bridges of said county. The bonds are to be issued pursuant to authority conferred upon the board of supervisors by House Bill No. 278, Chapter 30, General Laws of Mississippi, Extraordinary Session of 1955.

The record shows that during the month of March 1955, heavy rains fell over a large part of northeast Mississippi causing great damage to the public roads and bridges of Alcorn County and other counties in that

section of the state, and on March 29, 1955, the governor submitted in writing to the legislature, which was then in session, the matter of amending Section 5, Chapter 241, Laws of 1950, as amended by Chapter 279, Laws of 1950, so as to provide that in cases of emergency in which floods had washed away bridges and roads in any county, the board of supervisors may issue bonds for the purpose of constructing and repairing such roads and bridges without the necessity of an election. The legislature thereupon enacted House Bill No. 278, which was approved by the governor on April 1, 1955.

Immediately after the new act became effective, the board of supervisors of Alcorn County made a survey of the damage done to the roads and bridges in the several supervisor's districts by the heavy rains that had fallen during the month of March; and on April 14, 1955, the board of supervisors adopted an order and entered it upon its minutes reciting that great damage to the roads and bridges of the county had been caused by the recent floods, and that by reason thereof an emergency existed, and declaring its intention to issue $80,000 in negotiable bonds of the county, under the provisions of said House Bill No. 278, for the purpose of constructing, reconstructing and repairing the roads and bridges of the county; and the board fixed Monday, April 18, 1955, as the date on which the board would pass the necessary orders providing for the issuance of the bonds. The board met again on April 18, 1955, pursuant to its adjournment order of April 14, and adopted a formal resolution and order providing for the issuance of the bonds. The board also ordered that the bonds be validated in the manner provided by Title 18, Chapter 1, (Sections 4313-4318), Mississippi Code of 1942, and that the clerk advertise the bonds for sale on May 3, 1955. Notice of the sale was duly published, as provided by law, and bids were duly received on May 3, 1955, and the

bonds were sold, subject to the approval of their validity by the purchaser's attorney.

A transcript of the record was properly submitted to the State's bond attorney for his approval, and after he had issued his approving opinion the record was filed in the chancery court for validation of the bonds. The chancellor signed an order setting the date for the validation hearing on May 25, 1955. Objections to the validation and the issuance of the bonds were filed by W. V. Hutchins and others, and a new order was then entered fixing the date for the hearing on June 9, 1955.

In their objections to the validation of the bonds, the objectors alleged: (1) That House Bill No. 278 was invalid for the reason that the subject matter of the bill had not been included in the proclamation of the governor by which the special session of the legislature had been convened, as provided in Section 121 of the State Constitution; (2) that House Bill No. 278 did not authorize the issuance of county-wide bonds; (3) that no county-wide emergency existed on April 14, 1955, such as to authorize the issuance of the bonds; (4) that the several supervisor's districts had sufficient funds on hand at that time to defray the costs of repairing the roads and bridges without resorting to a bond issue; (5) that the board of supervisors acted arbitrarily and without sufficient foundation in fact in determining that an emergency existed; and (6) that the bonds were attempted to be issued without legal notice to the taxpayers of Alcorn County and without any opportunity for the taxpayers to be heard, and that the issuance of the bonds under such circumstance would result in the taking of their property without due process of law, in violation of the Fourteenth Amendment to the Federal Constitution, and in violation of Article 3 of the State Constitution.

Upon the hearing before the chancellor many witnesses testified concerning damage done to the county roads

and bridges by the excessive rains during the month of March. Testimony was also introduced to show the amounts of road funds on hand in the county treasury to the credit of each of the several supervisors' districts at the time the orders were adopted providing for the issuance of the bonds and the additional amounts that would probably be received during the remainder of the fiscal year.

At the conclusion of the hearing the chancellor found that the rains of March 19 to March 21 had caused unusual floods in the northeastern section of the state; that the main highways had been closed temporarily by reason of high waters; that the county roads and bridges were damaged much more than the main highways; and that the roads and bridges of Alcorn County had been damaged to the extent of at least $100,000. The chancellor found that, while it was true that some of the districts had sufficient funds on hand to defray the costs of repairs in those districts, if the extra expenditures were made out of the funds on hand, such expenditures would hamper the road and bridge maintenance and construction program during the year; and that other districts which had suffered still greater damages were faced with a real emergency because of the damage done by the heavy rains. The chancellor found that an emergency existed in the county within the meaning of House Bill No. 278, and that the board of supervisors did not abuse its discretion in declaring such emergency to exist.

The chancellor found that House Bill No. 278 had been constitutionally enacted, and that the act did not violate the due process clauses of the State or Federal constitution; and the chancellor entered a decree validating the bonds. From that decree the objecting taxpayers have prosecuted this appeal.

 █ The first point argued by the appellants' attorneys as ground for reversal on this appeal is that

the court erred in holding that House Bill No. 278 had been constitutionally enacted.

It is the appellants' contention that the legislature had no power to consider the subject matter of House Bill No. 278, for the reason that the subject matter of that act had not been included in the list of subjects submitted in the governor's proclamation convening the legislature in extraordinary session. But we think there is no merit in this contention. Section 121 of the Constitution of 1890 provides that: ''The governor shall have power to convene the legislature in extraordinary session whenever, in his judgment, the public interest requires it. Should the governor deem it necessary to convene the legislature he shall do so by public proclamation, in which he shall state the subjects and matters to be considered by the legislature when so convened; and the legislature, when so convened as aforesaid, shall have no power to consider or act upon subjects or matters other than those designated in the proclamation of the governor by which the session is called, except impeachments and examination into the accounts of state officers. The legislature, when so convened, may also act on and consider such other matters as the governor may in writing submit to them while in session.'' The journals of the House and Senate showed that the governor on March 29, 1955, submitted to the legislature for its consideration the subject matter embraced in House Bill No. 278. We therefore hold that the legislature had the power to consider and act upon the subject matter stated in House Bill No. 278, and that the law was constitutionally enacted.

It is next argued that House Bill No. 278 is violative of the due process clauses of the State and Federal constitutions, for the reason that the statute does not provide for the giving of notice to the taxpayers and an opportunity to be heard on the matter of the issuance of the bonds and the levying of a tax to pay the

same, prior to the issuance of the bonds. And the appellants cite in support of their contention Bouslog v. City of Gulfport, 112 Miss. 484, 72 So. 896, in which the court had under consideration Chapter 128, Laws of 1916, which authorized the boards of supervisors and the mayor and board of aldermen or other governing bodies of municipalities to erect sea walls for the protection of public roads or streets extending along the beach or shores of any body of water, and to lay special assessments on abutting property to help defray the cost of construction. The Court held in that case that the sea wall act was a local improvement measure, to be put into effect by the levying of special assessments, and that the act was inoperative and void for the reason that it did not require the giving of notice to the property owners and an opportunity for a hearing. But the decision in the case is not controlling in the case that we have here. House Bill No. 278 is not a local improvement measure providing for public improvements, the cost of which is to be defrayed in whole or in part by special assessments to be made against the property benefited.

House Bill No. 278 is an amendment to Section 5 of Chapter 241, Laws of 1950, which provides for a uniform system for the issuance and sale of county bonds. Section 1 of the act sets forth the purposes for which such bonds may be issued; and in paragraph (d) it is provided that the board of supervisors of any county may issue negotiable bonds of the county to raise money for the purpose of constructing, reconstructing and repairing roads, highways and bridges. Section 2 of the act authorizes the issuance of bonds of any road district or supervisor's district within the county for road purposes. Section 3 of the act provides a debt limitation upon the amount of bonds that may be issued for all county purposes. Section 4 of the act provides that the board of supervisors shall annually levy a special tax

upon all the taxable property within the county, which shall be sufficient to provide for the payment of the principal of and the interest on such bonds according to the terms of their maturity.

Section 5 of the act as amended by Chapter 279, Laws of 1950, and by House Bill No. 278, supra, provides that before issuing any bonds for any of the purposes enumerated in the act, the board of supervisors shall adopt a resolution declaring its intention so to do, stating the amount of the bonds proposed to be issued, and the purpose for which the bonds are to be issued, and the date upon which the board proposes to direct the issuance of such bonds; and that the resolution shall be published once a week for at least three consecutive weeks in a newspaper published in the county, and if 20 per cent of the qualified electors of the county shall file a written protest against the issuance of the bonds on or before the date specified in the resolution, then an election on the question of the issuance of the bonds shall be called and held as thereinafter provided. If no such protest is filed, the bonds may be issued without an election. Section 5, as amended by House Bill No. 278, supra, provides that, if the board of supervisors in any county determines that an emergency exists, due to the fact that floods have washed away, destroyed or seriously damaged the roads and bridges in any supervisor's district, or road district, in the county during the year 1955, the board of supervisors may adopt a resolution so finding and may issue bonds for road and bridge purposes without the publication of notice and without a submission of the question to a popular vote.

Chapter 241, Laws of 1950, is a complete act within itself. The purposes for which county bonds may be issued under the provisions of the act are enumerated. The purposes mentioned are recognized public purposes of such general benefit or public importance as to justify the issuance of bonds therefor and the use of the general

taxing power to provide for the payment of the principal and interest thereof. All bonds issued under the provisions of the act are to be paid out of funds derived from the proceeds of a general tax levied upon all the taxable property in the county and collected as other county taxes are collected. There is no provision in the act for the payment of any part of the indebtedness incurred out of the proceeds of "special assessments", and there is no requirement that notice be given to taxpayers or an opportunity for a hearing prior to the issuance of bonds.

This Court has fully recognized the rule that, where local improvements of a public nature are constructed under laws providing that the cost shall be paid in whole or in part from the proceeds of special assessments to be levied on the property beneficially affected thereby, the property owners have a right to notice and an opportunity to be heard before special assessments can be legally imposed upon the property. Bouslog v. City of Gulfport, supra; Union Savings Bank & Trust Co. v. City of Jackson, 122 Miss. 557, 84 So. 288; Swayne v. City of Hattiesburg, 147 Miss. 244, 111 So. 818; Simmons v. Hopson's Bayou Drainage District, 112 Miss. 200, 72 So. 901; Jones v. Belzoni Drainage District, 102 Miss. 796, 59 So. 921. But the rule thus stated applies only to special assessments made against property which is to be specially benefited by the local improvement, and the rule has no application where the cost of the improvements are to be paid from funds raised by the exercise of the general taxing power of the state or any of its municipal subdivisions.

 The funds to be raised under the provisions of Chapter 241, Laws of 1950 as amended, for the payment of the principal and the interest of the road bonds involved in this controversy are to be raised, not by the imposition of special assessments, but by the exercise of the general taxing power of the county. The question

of actual benefits to property affected is not involved, and the appellants were not entitled to notice and an opportunity to be heard on that question. █ The state law, Title 39, Division 3, Sections 9744-9853, Code of 1942, gives the property owner of the county an opportunity to be heard upon the valuation of his property for general taxation, and the requirements of due process under the state and Federal constitutions are fully met.

 The Legislature may provide by law what shall be essential and what not essential in taxation proceedings, subject only to the fundamental principles that the taxpayer must have an opportunity to be heard as to the amount of the charge laid upon his property, as to whether the purpose of the tax is a permissible one, and as to the lawfulness and the proper apportionment of the tax against his property. 12 Am. Jur. 330, Constitutional Law, par. 640.

 █ Road building is a public purpose which may be effected by general taxation. Missouri P. R. Co. v. Western Crawford Road Improv. District. 266 U.S. 187, 45 S. Ct. 31, 69 L. Ed. 237.

In Memphis v. Charleston Railroad Co. v. Pace, 282 U. S. 241, 75 L. Ed. 315, 51 S. Ct. 108, the Court said:

"The construction and maintenance of serviceable roads in any community is a matter in which the whole community have an interest and is a typical purpose for which property may be taxed by the state. Missouri P. R. Co. v. Western Crawford Road Improv. Dist. 266 U.S. 187, 190, 69 L. Ed. 237, 45 S. Ct. 31. Whether the tax shall be state-wide or confined to the county or local district wherein the improvement is made, and whether it shall be laid generally on all property or all real property within the taxing unit, or shall be laid only on real property specially benefited, are matters which rest in the discretion of the state and are not controlled by either the due process or the equal protection clause of the 14th Amendment."

The tax sought to be enjoined in Memphis & Charleston Railroad Co. v. Pace, supra, was a tax levied to make a partial payment upon the bonds of the Oldham Road District in Tishomingo County, Mississippi, a road district which had been organized under Chapter 277, General Laws of Mississippi 1920; and the Court held that the appellant had not shown that the tax imposed under the sanction of the state statutes was either palpably arbitrary or unreasonably discriminatory; that it was imposed for what obviously was a public purpose; that it was a general tax and was spread over all the taxable property in the district according to the value thereof as fixed by the assessment for state and county taxes; that the appellant was afforded ample opportunity by the state law to be heard on that assessment and to have it corrected if erroneous or unfair; and that the appellant's complaint on appeal that the imposition of the tax on an ad valorem basis was "inherently invalid" under the due process and equal protection clauses of the Federal constitution was not tenable.

In the case of Valley Farms Company of Yonkers v. County of Westchester, 261 U. S. 155, 67 L. Ed. 585, 43 Ct. 261, the Court held that a state legislature may without notice to property owners establish a sewer district and direct that the cost of the sewer be assessed upon the real property within the district in proportion to its value as ascertained for purposes of general taxation; and that where the state law gives the property owner an opportunity to be heard upon the valuation of his property for general taxation, the requirements of due process under the state and Federal constitutions are fully met.

In the case of Brown v. Hooper, 269 U.S. 396, 70 L. Ed. 330, 46 S. Ct. 141, the Court held that, where a local improvement territory is selected, and the burden is spread by the legislature or by a municipality to which the state has granted full legislative powers over the

subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. Valley Farms Co. v. County of Westchester, supra; Hancock v. Muskogee, 250 U.S. 454, 63 L. Ed. 1081, 39 S. Ct. Rep. 528; Withness v. Ruecking Const. Co. 249 U.S. 63, 69, 63 L. Ed. 479, 483, 39 Sup. Ct. Rep. 200; Wright v. Avoyelles (C.C.A. 5th) 264 Fed. 705; but that it is essential to due process of law that such owners be given notice and opportunity to be heard on that question where the district was not created by the legislature, and there has been no legislative determination that their property will be benefited by the local improvement.

In Mississippi, counties are created by direct act of the legislature, and by Section 170 of the State Constitution the board of supervisors has full jurisdiction over roads and bridges, "to be exercised in accordance with such regulations as the legislature may prescribe." Only highways designated by the legislature as "state highways" are excepted from the jurisdiction of the board of supervisors. The legislature, by general statutes, has authorized the board of supervisors of any county to issue bonds for the purpose of constructing, reconstructing and repairing the roads and bridges of the county, and to levy general ad valorem taxes upon all the taxable property of the county for the payment of the principal and interest of the bonds as they mature. The statute under which the bonds involved in this controversy are being issued is a general statute of that kind, and the bonds are to be paid out of the proceeds of a general advalorem tax levied upon all the taxable property of the county. The state law gives the property owner ample opportunity to be heard upon the valuation of his property for general taxation; and under the rule laid down by the Supreme Court of the United States in Valley Farms Co. v. County of Westchester, supra, and other cases cited above, the require-

ments of due process are fully met. See also St. Louis & S.W. R. Co. v. Nattin, 277 U.S. 127, 72 L. Ed. 830, 48 S. Ct. 438; Wright v. House, 188 Ind. 247, 121 N.E. 433.

In Lang v. Board of Supervisors of Harrison County, 114 Miss. 341, 75 So. 126, the Court had under consideration the matter of the issuance of road bonds under Chapter 172, Laws of 1916, which provided for the issuance of road bonds without an election, and the Court in its opinion said: "The whole question is one of statutory construction, and it is not necessary for the legislature to place a requirement to submit it to a vote in the act, and as the legislature has not placed any restriction, the board has the discretion as to the terms of its contract in the issuance of bonds so authorized by the legislature. * * * However desirable it may be as a matter of policy to give the voters the power to restrain and prevent bond issues, it is at last only a question of policy, and not one of constitutional power. In the absence of constitutional restriction, the legislature has the power to confer on the board practically unlimited power in the bond issue. The extent of limitation in the absence of restriction is pointed out in the case of Monroe County v. Strong, 78 Miss. 565, 29 So. 530."

██ █ There is no constitutional requirement that bond issues for road purposes be submitted to a popular vote before the bonds are issued; and the rule is well settled that: "In the absence of an applicable constitutional requirement, counties may be authorized to issue bonds without a submission of the question to a popular vote, and may do so where no provision is made for such submission, or where the bonds proposed to be issued are within an exception to the constitutional or statutory provision." 20 C.J.S., 1182, Counties, par. 266. See also Prather v. Googe, 108 Miss. 670, 67 So. 156; Lang v. Board of Supervisors of Harrison County, supra.

■■ ■ After a careful consideration of the provisions of House Bill No. 278, we are of the opinion that the act does not conflict with or otherwise violate any of the provisions of the state or the Federal constitution. We therefore hold that the act is valid.

■■ ■ There was no constitutional or statutory requirement that notice be given to the taxpayers in this case and an opportunity for a hearing before the bonds were ordered issued. But the appellants had a right under the validation statute to challenge the validity of the bonds in the validation proceedings, and the appellants did challenge the validity of the bonds in the validation proceedings, and have had a full hearing on all questions raised by the objections filed. We think that the requirements of due process have been fully met.

If the issuance of county road bonds for the construction or reconstruction of roads and bridges, in cases of emergency, as provided in House Bill No. 278, without a submission of the question to a vote of the electors, is regarded by the people as unwise, unjust or oppressive, the remedy must be sought through the action of the legislature. The Judicial department of the state is powerless to grant relief on these grounds.

■■ ■ Finally, it is argued that the proof taken before the chancellor failed to show that an actual emergency existed in Alcorn County on April 14, 1955, due to floods having caused the road and bridges in the county to be washed away, destroyed, or seriously damaged, so as to authorize the issuance of the bonds without an election. But we think there was ample evidence to support the chancellor's finding that an emergency existed within the meaning of House Bill No. 278 and that the board did not abuse its discretion in determining the same to exist.

The decree of the lower court is therefore affirmed.

Affirmed.

*Roberds, P.J.,* and *Hall, Lee, Arrington, Ethridge* and *Gillespie, JJ.,* concur.