ROBERTSON, Justice,
for the Court:
I. Introduction
These consolidated bond validation and declaratory judgment actions present important questions concerning whether citizens have due process rights to be heard— and, if so, where and to what extent — before their property may become burdened by the obligation to underwrite revenue bonds issued by a local political subdivision. Beyond that the case presents the question of whether a local utility district may consistent with our state’s constitution be organized and exist under a local and private law in the face of a general law respecting the organization and existence of such districts.
On this latter point, so long as the local and private act furthers the same general purposes and policies as the general act and so long as the differences between the two are primarily procedural or otherwise relatively minor, nothing in our Constitution, Article IV, Sections 87-90, saps the local and private act of its enabling power. Where, as here, such a situation exists, the citizens of the political subdivision covered by the local and private act have alternatives in that they may proceed under either that act or the general law, and the election so made is not subject to judicial review.
More fundamentally, we recognize that the decision to undertake substantial public improvements and to finance same via a bond issue are matters generically legislative. Our law secures to individuals no access to a judicial forum to thwart such actions except when they contravene the authority of the legislative body, and, accordingly, nothing in the due process guarantee of our constitution affords any citizen the right to reasonable advance notice and the opportunity to be heard before such legislative actions may be taken. The citizen has a due process right to challenge the accuracy and proportionality of the assessment and taxation of his property. He has a similar right of access to a judicial forum to present with respect to the bond issue any objection based in principle as distinguished from policy, and there to raise the question of whether the political subdivision has exceeded the substantive limitations upon its legislative power. So long as the citizen has been afforded these rights, the district may proceed with such projects as are consistent with the governing board’s perception of the public need and finance such projects in any manner allowed by law.
As will be explained more fully below, each of the assignments of error tendered by Objectors on this appeal is rejected. The final decree rendered below is affirmed.
II. The Background
A. The Core Facts
The Board of Commissioners of the Gautier Utility District of Jackson County, Mississippi, (sometimes “the Board”) has determined to develop, construct, operate and maintain a new water and sewage treatment system designed to serve and benefit *1009 the entire district. The anticipated total cost of the project is $11,185,000. The project is to be financed by a grant from the United States Environmental Protection Agency in the sum of $3,385,000 and an interest bearing loan from the United States Farmers Home Administration (FmHA) in the amount of $7,800,000.
The mechanism selected by the Board for the consummation of the $7,800,000 FmHA loan is a bond issue. The District proposes to issue an 11.625 percent Combined Utility System Revenue Bond in the principal amount of $7,800,000. The record suggests that FmHA is prepared to purchase this bond, provided certain conditions are met or agreed to.
Prior to its determination to issue the bond, the Board by resolution
determined that it is necessary and in the best interest of the District and of those residing within its boundaries to provide the improvements [the water and sewage treatment system] hereinafter described.
By resolution adopted April 11, 1983, the Board found and determined
that it is necessary and in the public interest that the aforesaid [11.625 percent combined utility system revenue] bond be issued as hereinafter provided.
These determinations are legislative in nature made in the exercise of legislative authority vested in the Board.
The Board contemplates that the property owners of the District will pay fees for the services rendered through the new combined utility system and that the revenue so generated shall be applied to the retirement of the District’s principal and interest obligations under the bond. In the event of the insufficiency of such revenues to meet the bond obligations, the property owners of the District would be subject to a special ad valorem tax in such amount as is reasonably necessary “not to exceed Five (5) Mills on all taxable property in the district”.
B.L. White and others, residents and property owners within the District (referred to herein as Objectors), have taken great exception to these plans. Not only have Objectors opposed validation of the bond, they have gone so far as to charge that the legislative authority under which the District was created and purports to function was granted in contravention of the provisions of the Constitution of the State of Mississippi restricting the enactment of local and private laws. Because of the nature and scope of the attack mounted by Objectors, it is appropriate that we recite a bit of the history.
B. The Creation of the District
On May 17, 1966, Senate Bill No. 2251 was approved by the Governor. It has been published as Chapter 831, Local and Private Laws of Mississippi, Regular Session, 1966. This enactment set forth a scheme for the incorporation of water, sewer, gas, utility and fire protection districts in Jackson County, Mississippi. No other county is covered. At the time there was no general law providing a statewide scheme for the creation of such utility districts.
On May 23, 1972, however, such a general law, designated Senate Bill No. 2010, became law. This enactment was originally published as Chapter 536, General Laws of Mississippi, Regular Session, 1972. It has been codified as Miss.Code Ann. §§ 19-5-151 et seq. (Supp.1984). The act has been amended in respects not important here.
A comparison of the local and private law of 1966 with the general law of 1972 reveals substantial similarities. Those similarities are sufficient to generate a speculation that the statewide act was modeled upon the then six year old Jackson County local and private act, although nothing turns on the point.
For reasons not explained by any utterance of the legislature, the general law did not purport to affect the local and private law. Evidence that the legislature regarded the local and private law as of continuing viability was supplied by the enactment on May 26, 1980, of House Bill No. 1286 which amended the 1966 act by providing, inter alia, that the maximum rate of inter *1010 est authorized for payment on bonds issued by the utility district would be increased from six to ten percent per annum. See Chapter 949, Local and Private Laws of Mississippi, Regular Session, 1980. This bond interest ceiling was further increased in 1982 to 14 percent by House Bill No. 1127. See Chapter 844, Local and Private Laws of Mississippi, Regular Session, 1982.
At the time of the enactment of the general law enabling the creation of utility districts — May 28, 1972 — the Gautier Utility District had not been organized. That step was not begun until April 12, 1973— some ten and a half months later. On that date, the law on its face made available to Gautier two alternatives — that provided in the local and private law of 1966 and that provided in the general law of 1972.
On April 12, 1973, at a recessed regular meeting of the Board of Supervisors of Jackson County, Mississippi (the “Supervisors”), petitions for the incorporation of the Gautier Utility District were filed by more than twenty-five (25) owners of real property residing within the boundaries of the proposed district. The petitions were presented under the authority of and in conformance with the 1966 local and private act. Upon receipt of the petitions, the Supervisors issued an order setting a public hearing on the question of whether organization of such a district were required by the public convenience and necessity, and further directing the publication of notice that the public hearing would be held. Following the hearing, the Supervisors, on June 4, 1973, adopted a “Resolution Finding and Determining that the Public Necessity and Convenience Requires the Creation of the Gautier Utility District of Jackson County, Mississippi." A copy of the resolution was published in a newspaper of general circulation in the county on June 7, 14, 21, and 28, 1973.
On July 3, 1973, at a recessed regular meeting, the Supervisors adopted a resolution creating the District as a combined water and sewer utility and fire protection district within Jackson County pursuant to the 1966 local and private act. The resolution noted that no protest or objection was filed with the Supervisors and that no party had appeared in opposition to the creation of the District.
Section 1(f) of the 1966 local and private act provides “any party” aggrieved or prejudiced by the action of the Supervisors could appeal to the Circuit Court, and if no appeal be taken within 15 days after the adoption of the resolution creating the District, the “creation of such district shall be final and conclusive, and shall not thereafter be subject to attack in any court.” No such appeal was taken. On July 18, 1973, by resolution of the Supervisors, three Commissioners were appointed to the District and directed to organize in the manner prescribed by the Act.
C. The Decision To Develop A Combined Utility System and To Issue The Bond
On August 30, 1982, the FmHA advised the District that, on certain terms and conditions, it would provide $7,800,000.00 toward the construction and operation of the combined utility system project. On April 11, 1983, the Board of Commissioners, after considerable investigation and planning, formally adopted three resolutions which have precipitated the instant litigation.
The first of the three resolutions accepted and agreed to the terms and conditions of the August 30, 1982 FmHA letter. The second authorized the sale to the FmHA, pursuant to Chapter 844, Local and Private Laws of Mississippi, Regular Session of 1982, of a combined utility revenue bond in the principal amount of $7,800,000 bearing interest at a rate of 11.625% per annum, payable in annual installments of $932,476 for thirty-five years beginning in the third year from the date of issuance.
The third resolution authorized and directed issuance of a negotiable interest-bearing combined utility system revenue bond of the District in the principal amount of $7,800,000 to raise money for the purpose of constructing, acquiring, reconstructing, improving, bettering and extending the combined utility system of the District; prescribing the form and incidents of *1011 said bond; providing for the collection, segregation, and distribution of the revenues to be derived from the operation of said system in an amount sufficient to pay the cost of the operation and maintenance thereof and to pay the principal and interest on said bond and making provision for the depreciation fund and a contingent fund.
D. Proceedings Below
The instant proceedings were commenced on April 21, 1983, on which date there was filed in the Chancery Court of Jackson County, Mississippi, the transcript of the bond validation proceedings of the Board of Commissioners of the Gautier Utility District of Jackson County, Mississippi. Public notice was immediately given. In due course, Objectors and others filed their “Specific Taxpayer’s Objections” along with their petition to deny issuance of bond. These proceedings were assigned Docket Number 44,063 in the Chancery Court of Jackson County, Mississippi.
Thereafter, Objector White and others brought in the Chancery Court a separate action against the Gautier Utility District and its commissioners. In this separate complaint filed May 27, 1983, Objectors sought a declaratory judgment that the 1966 local and private act, as amended, was invalid by virtue of the provisions of the Constitution of the State of Mississippi restricting local and private laws [Article 4, § 87 and 90] and that guaranteeing due process of law to all citizens [Article 3, § 14] and, therefore, that any utility district organized under that local and private act, such as the Gautier Utility District, was without power to act.[1]
The two matters were consolidated for hearing and were in fact heard on May 30, 1983, in the Chancery Court of Jackson County, Mississippi, Honorable Ray H. Montgomery, Special Chancellor. On September 20, 1983, the Chancellor released his opinion wherein he held, inter alia, that the local and private law of 1966 was valid and in full force and effect, that the Gautier Utility District of Jackson County, Mississippi, was duly organized and existing under that act, and that the District had acted within its legislative authority in the premises. A final judgment was entered on October 4, 1983, which validated the II.625 percent Combined Utility System Revenue Bond in the amount of $7,800,000 and dismissed the complaint for declaratory judgment.
Objectors[2] have timely perfected their appeal to this Court.
III. Nature and Scope of The Actions
Of considerable importance is the scope of these proceedings, both in the trial court and on appeal. We begin with the fact that these are two separate actions — a bond validation action and separate civil action for declaratory judgment. The trial court ordered these actions consolidated for all purposes, see Rule 42(a), Miss.R.Civ.P., albeit with the full acquiescence and consent of each interested party. In such posture any matter is properly presented, litigated and decided if it lies within the scope of either action had there been no consolidation.
A. The Bond Validation Proceedings
First, we have a bond validation proceeding instituted in accordance with Miss. Code Ann. §§ 31-13-5 et seq. (1972). The *1012 purpose of such hearing is to consider all juridical questions of law or fact, or both, touching the legality and validity of the bonds. Legislative questions preceding the issuance of the bonds are beyond judicial review, either in the validation action or otherwise.
The chancery court is charged with considering “all legal papers pertaining to the issuance of said bonds” emanating from the issuing district, together with the written opinion of the State’s bond attorney. Beyond that the chancery court
may hear additional competent, relevant and material evidence under the rules applicable to such evidence in the chancery court, so as to inquire into the validity of the bonds or other obligations proposed to be issued,....
Miss.Code Ann. § 31-13-5 (1972)
The statute contemplates that any “valid objection” to the issuance of the bonds may be considered. Mills v. Richton Municipal Separate School District, 236 Miss. 273, 277, 110 So.2d 349, 351 (1959); Lee v. Hancock County, 181 Miss. 847, 855-856, 178 So. 790, 791 (1938).
The purpose of the hearing is to lay at rest all questions regarding the legality of the bonds. All matters which, if litigated with results adverse to the issuing district, could upset the bonds must as a matter of common prudence be resolved before the bonds are validated. On this assumption, the significance of the hearing has been legislatively declared in Miss.Code Ann. § 31-13-7 (1972), which provides that a decree validating bonds
shall be forever conclusive against the county, municipality, or district issuing same; and the validity of said bonds or other written obligations shall never be called in question in any court in this state.
The effectiveness of this statute in achieving its avowed end turns on the conclusive effect of the decree. A decree may not foreclose litigation of questions which as a matter of law were beyond the scope of the hearing. Therefore, the scope of the hearing must be sufficiently broad to consider all questions that need to be resolved before the bonds are sold. By statute or otherwise this state has no power to cut off from litigation secured due process rights merely by restricting the scope of the bond validation proceeding. See In re Savannah Special Consolidated School District, 208 Miss. 460, 471-472, 44 So.2d 545, 548 (1950). The folly of such an attempt is obvious.
Several of our prior cases are instructive. Von Zondt v. Town of Braxton, 149 Miss. 461, 115 So. 557 (1928), holds that a taxpayer may not, once the bond validation decree becomes final, maintain, on grounds that the order creating the taxing district is infirm, an action to enjoin the collection of taxes with which the political subdivision intends to meet its bond obligation. 149 Miss. at 464-65, 115 So. at 558-59. City of West Point v. Hawkins, 164 Miss. 591, 145 So. 345 (1933), is to like effect, holding that it is incumbent upon a dissenting taxpayer to present such objections as he has at the bond validation hearing and not thereafter. 164 Miss. at 597, 145 So. at 346. The issues tendered in the subsequent action to enjoin assessment are precluded under notions of collateral estoppel.
Love v. Mayor and Board of Alderman of Yazoo City, 162 Miss. 65, 138 So. 600 (1932), was an action for an injunction to restrain city officials from issuing bonds on grounds that the legislation under the authority of which the city purported to issue the bonds violated a number of provisions of this state’s constitution. The action in Love was commenced after the decree in the bond validation proceedings had become final. This Court squarely and correctly held that the time for presentation of objectors’ constitutional claims was at the bond validation hearing and not thereafter.
The above cases — Von Zondt, Hawkins and particularly Love — are predicated upon statute. Miss.Code Ann. §§ 31-13-7 (1972). Collectively, they hold that, subsequent to the bond validation decree becoming final, taxpayers may not be heard to complain of the legality or consti *1013 tutionality of any facet of the bond issue or the project to be funded. Section 31-13-7 coupled with common law notions of res judicata and collateral estoppel preclude such “re-litigation”. For these holdings to make sense, we must recognize as a corollary that the issues tendered in Von Zondt, Hawkins, and Love could have been presented and fully heard at the bond validation hearing. That which could not have been presented (because of the limited scope of the hearing or whatever) certainly may not be precluded from subsequent litigation consistent with due process.[3]
The matter of the constitutionality of the statute under which the district has been organized and purports to exist may be considered at the validation hearing, although not thereafter. Love v. Mayor and Board of Aldermen, 162 Miss. 65, 71-72, 138 So. 600, 601 (1932). If the district has been organized under an unconstitutional act, it has no authority to do anything, much less issue bonds. The validation proceedings seek to establish both for the benefit of the bond purchaser(s) and the citizens of the district that the bonds constitute a valid and subsisting obligation according to their tenor and that there are down the road no surprises in store for those who in good faith have made investments or commitments in reliance thereon. Obviously, if the statutory basis for the issuing district’s existence is subject to doubt, such doubt needs to be resolved before the bonds are validated and sold, not after.
On the other hand, whether the organization of the district was lawful in the sense that, in accordance with the enabling legislation, all of the “i’s” were dotted and the “t’s” crossed is ordinarily regarded as collateral and may not be inquired into, provided there has been an adequate opportunity to litigate such questions at some earlier point in time. See Von Zondt v. Town of Braxton, 149 Miss. 461, 463, 115 So. 557, 558 (1928); Lincoln County v. Wilson, 125 Miss. 837, 839-841, 88 So. 516, 517 (1921). By the time of the bond validation hearing, such matters, as here, have *1014 invariably become time barred. See Section 1(f) of the local and private act of 1966.
No matter within the legislative authority of the district may be considered at a bond validation proceeding. The wisdom vel non of the construction and operation within the district of a new combined utility system is a matter within the district’s legislative authority and was wholly beyond the scope of the proceedings below. Such matters are beyond the scope of our review here. Of course, if the district were attempting to issue a $7,800,000 bond to fund the operation of a railroad, the point could be presented and the court might indeed refuse to validate the bond, not because no railroad was needed or the plans were too extravagant, but because the district has no authority in law to operate a railroad. See In re Validation of $175,000 General County Funding Bonds, 185 So.2d 420, 425 (Miss.1966); Sykes v. Mayor and Aldermen of Columbus, 55 Miss. 115, 140 (1877).
In the context of the case at bar, there were well within the scope of the bond validation hearing the questions tendered by Objectors whether rights secured by Article 3, Section 14 and by Article 4, Sections 87-90 of the Mississippi Constitution had been violated.
On the other hand, matters having nothing to do with the validity of the bonds in issue should not be considered. Both below and here Objectors have fired a broadside of extraneous charges against the District. That the District and its Board may on other occasions have made default in the keeping of minutes, in the filing of official bonds, and in other like matters is of no concern here. These are matters which occurred prior to and are unrelated to the issuance of the bond and were accordingly beyond the scope of the validation hearing. In re Validation of $175,000 General County Funding Bonds, 185 So.2d 420, 424-425 (Miss.1966).
B. Declaratory Judgment
Our recently inaugurated declaratory judgment procedure is well suited for the hearing and determination of claims such as those Objectors tender under Sections 14, 87 and 90 of the Mississippi Constitution of 1890. Even if those claims were beyond the scope of the bond validation action—which they are not—they would have been well within the competence of the trial court to hear and adjudge under Rule 57, Miss.R.Civ.P.
No advance determination that the plaintiff is likely entitled to the declaratory judgment he seeks is necessary before the trial court may with propriety proceed under Rule 57. We no more pre-judge the outcome of Rule 57 cases than any others. That a plaintiff is entitled to no relief whatsoever in no way vitiates the jurisdictional or procedural components of a declaratory judgment action. Peterson v. Sandoz, 451 So.2d 216, 217, 219 (Miss.1984).
Among the cases where a proceeding for declaratory judgment is most needed are those where there exists an actual dispute with respect to which the parties have a compelling need to know where they stand before entering a substantial financial undertaking. This is such a case. At all relevant times there has existed a live controversy regarding the legality of the Gautier Utility District and its authority to issue bonds. This controversy needs to be resolved authoritatively and conclusively before the $7,800,000 bond is sold.
Rule 57 provides that the trial court
may refuse to render or enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding.
The rule thus vests a certain discretion in the trial court.
The trial judge below held that this was not a proper case for consideration under Rule 57 because all controversy would not thereby be terminated. In this he misperceived the import of the rule. *1015 We have heretofore approved a declaratory judgment in a case where all controversy did not thereupon cease. Alexander v. State ex rel. Allain, 441 So.2d 1329, 1346-1347 (Miss.1983). As long as one or more legal issues vital to the controversy is susceptible of authoritative resolution, the trial judge may and generally ought hear and adjudicate the case under Rule 57.
This case is well suited to the rule. The questions raised by Objectors under Sections 14, 87 and 90 of our Constitution need to be resolved before matters go any further. These matters can be authoritatively decided here. A final judgment will “terminate the uncertainty or controversy” on those issues. That there remain federal issues to be litigated elsewhere, or other areas of controversy beyond that, generally ought not furnish an excuse for the trial court’s refusal to do what it can do to lay to rest what part of the controversy it can.
IV. Is The Local And Private Act of 1966 Unconstitutional?
Objectors initially attack the authority of the Gautier Utility District to act at all, much less issue bonds. The argument presented is that the 1966 local and private act may not undergird the existence of the District consistent with Sections 87 and 90 of the Mississippi Constitution of 1890. The former section prohibits the enactment of special or local laws for the benefit of private individuals or corporations. The latter sets forth certain matters which may be regulated only by general laws of statewide application. For the reasons set forth below, neither provision is sufficient to advance Objectors’ cause.
The District urges that attacks upon the legality of its creation and the validity of its existence are time barred. The Local and Private Act of 1966 contains in Section 1(f) a proviso that, if no appeal from the creation of the District is taken to the circuit court within 15 days, such creation shall be final and beyond attack. No such appeal was taken. With respect to questions having to do with whether there has been compliance in the course of creation with the strictures of the enabling legislation, the District is correct. On this record, the Gautier Utility District became on July 18, 1973, a lawfully created and viable utility district insofar as the local and private act may empower such a district to exist. The un-appealed from actions of the Board of Supervisors in creating the District are not subject to collateral attack here. Biloxi-Pascagoula Real Estate Board, Inc. v. Mississippi Regional Housing Authority No. VIII, 231 Miss. 89, 98-99, 94 So.2d 793, 796-97 (1957).
The District’s position, however, misses the thrust of Objectors’ argument. Objectors say that the local and private act itself (as distinguished from the District) is unconstitutional for a variety of reasons. By reason of the purported lack of constitutional validity of the act, Objectors argue that it has no enabling power. Any utility district purportedly created thereunder is necessarily without the foundation of a constitutionally valid enabling act, Objectors continue. If that be so, it matters not with what precision the “i’s” have been dotted and “t’s” crossed per the requisites of the enabling act. Nor may the enabling act effectively provide that upon the occurrence of certain conditions or the passage of a certain period of time questions regarding the constitutionality of the act may become barred. If the local and private act of 1966 be unconstitutional in whole or in part, there can be no doubt of our authority and responsibility to so declare at this time. See Alexander v. State Ex rel. Allain, 441 So.2d 1329, 1333 (Miss.1983).
A. Section 87
Section 87 of our constitution provides in substance that no special or local law shall be enacted for the benefit of private individuals or corporations with respect to matters for which provision may be made by general law. The prohibitions of Section 87 are wholly inapplicable to “public” entities such as the Gautier Utility District. Section 87 prevents the enactment of local and special laws “for such *1016 corporations as were not public in their nature.” Feemster v. City of Tupelo, 121 Miss. 733, 743, 83 So. 804, 806 (1920); In re Validation of $15,000,000 Hospital Revenue Bonds, 361 So.2d 44, 48 (Miss.1978).
To be sure we have heretofore recognized a rule of constitutional proportions prohibiting local and private “county-wide” laws, applicable to one or more counties only and exempting the rest, differing from county to county without a rational basis therefor. See Rolph v. Board of Trustees of Forrest County General Hospital, 346 So.2d 377, 379 (Miss.1977); Smith v. Transcontinental Gas Pipeline Corp., 310 So.2d 281, 285 (Miss.1975). Smith grounds this rule in the general scheme provided in our constitution for local legislation. See Miss. Const. §§ 87-90 (1890). The result in Smith could have been predicated upon Section 87 alone, because the law there found to be local and private was for the benefit of private individuals.
Rolph, however, involved an attempt by the Legislature to create different substantive rules with respect to the power of the Forrest County General Hospital to waive governmental immunity — rules differing from those in force in the rest of Mississippi. Rolph quite correctly applied the general constitutional proscription on local and private county-wide laws announced in Smith and struck down the local and private bill there in issue.[4]
Matters appropriate for legislative attention do not divide themselves into two neat categories — those which legally may be dealt with only by general laws and those which may only be subject to local and private laws. There is obvious overlap — a concurrent jurisdiction, if you will — for many subjects may lawfully be dealt with and acted upon by either form of legislation.
It is ingrained in us all that general laws are to be preferred over private laws. Harris v. Harrison County Board of Supervisors, 366 So.2d 651, 654 (Miss.1979); Smith v. Transcontinental Gas Pipeline Corp., 310 So.2d 281, 283-84 (Miss.1975). Where Objectors’ argument founders is in their failure to understand who in law is vested with the primary responsibility of determining whether a particular matter will be dealt with by general or local laws. Subject to the strictures mentioned above, that responsibility is vested in the legislature. As we put the point in Harris v. Harrison County Board of Supervisors, 366 So.2d 651 (Miss.1979):
Although general laws are preferred over private laws, the function of deciding the wisdom and propriety of enacting special laws is in the legislature and not in the courts, and courts will not refuse to enforce such [private] laws merely because it may be felt that a general law would have been more suitable.
366 So.2d at 654
This idea of legislative authority emanates from Article IV, Section 89 which sets forth the procedure for enactment of a local and private act. When the legislature has complied with those requisites, “the courts shall not, because of its local, special, or private nature, refuse to enforce it”, unless it contravenes Section 90 (which, as will be explained below, this act does not).
Under our constitutional scheme, there is no prohibition upon the Legislature’s enacting upon a given subject matter by both a general law and a local and private law. This is particularly so where the object and purpose of each act is consistent with the other and where the differences between them are primarily procedural or minor.[5] Such was the situation *1017 confronted by the court in In re Validation of $15,000,000 Of Hospital Revenue Bonds, 361 So.2d 44 (Miss.1978), wherein both a general act of the legislature, Miss.Code.Ann. §§ 41-13-1, et seq. (1972) and a local and private act, Miss. Local & Private Laws, Chapter 947 [House Bill No. 1232] (1977) provided alternative methods for raising funds for acquisition of hospital facilities in a municipality. In the face of a challenge that the local and private act was unconstitutional under Section 87, this Court held that the local and private act
provided to the City of Hattiesburg an alternative method of raising funds for the purpose of acquiring hospital facilities in that municipality. It is clear that the municipal government might have proceeded under the general law or, at its election, might have proceeded under the terms of the Local and Private Act. 361 So.2d at 49.
Nothing said here, of course, invalidates or calls into question the substantive holding of cases such as Smith and Rolph wherein this Court struck down legislative attempts to enact significantly differing rules of substantive law regulating the important rights and interests of citizens in one county to the exclusion of all other counties.
B. Section 90
Objectors next argue that the local and private act of 1966 runs afoul of the provisions of Article IV, Section 90 of the Mississippi Constitution of 1890. Section 90 enumerates various matters with respect to which the Legislature has no authority to enact local, private or special laws. The prohibitions invoked by Objectors, in the express language of Section 90, are
(d) regulating the rate of interest on money;
* * * * * *
(h) exemption of property from taxation or from levy or sales;
* * * * * *
(o) creating, increasing, or decreasing the fees, salary or emoluments of any public officer;
******
(r) conferring the power to exercise the right of eminent domain ... in any other manner than that prescribed by general law;
*1018 These points may be dispatched seriatim as they are wholly without merit.
Subsection (d) of Section 90 prohibits the enactment of local and private usury laws. It has nothing to do with the rate of interest on bond obligations of a local governmental unit.
Subsections (h) and (o) regarding the exemption of property from taxation and increasing fees and salaries of public officials on their face have no application to the case at bar. Objectors cite no authority nor argument that these subsections in any way advance their cause. Why they are even mentioned escapes us.
Subsection (r) states that no local, private or special law may confer the power of eminent domain “in any other manner than that prescribed by general law”. True, the local and private act in question confers upon the Gautier Utility District the right of eminent domain, but nothing in that act confers any authority on the district to exercise the right of eminent domain in any manner other than that prescribed by general law. Nothing in the local and private act of 1966 contravenes Section 90(r). See Loden v. Mississippi Public Service Commission, 279 So.2d 636, 639-640 (Miss.1973).
The assignments of error to the effect that the creation of the Gautier Utility District and/or the enactment of the local and private act of 1966 contravene the provisions of Article IV, Sections 87-90 of the Mississippi Constitution of 1890 are without merit and are denied.
V. Due Process
Objectors next argue that they have been denied the due process of law in violation of rights said to have been secured to them by Article III, Section 14 of the Mississippi Constitution of 1890.[6] This most familiar of all constitutional rights is written: “No person shall be deprived of life, liberty, or property except by due process of law.”
Due process guards each person's every substantial entitlement created and made legitimate and protected from interference by the positive law of the state. The fundamental problem with Objectors’ argument is that it never says where or how our law has created a right of which they are being deprived. What is it that is being taken from them without due process and where in our law is that what protected from interference by the. State? We are not told.
If Objectors’ property is being taken from them, due process guards that taking. But where the method of taking is ad valorem taxation levied generally and equally on all property in an entire taxing district, a property owner’s due process rights are thought satisfied when he is afforded a reasonable procedure for challenging the accuracy and equity of the valuation of his property and the computation of his tax. So long as the taxing district acts within the authorities conferred by the legislature — including legislatively imposed limitations upon the millage rate — and so long as the taxpayer is afforded his day in court on the question of validation, In re Savannah Special Consolidated School District, 208 Miss. 460, 471-472, 44 So.2d 545, 548 (1950), such rights as the due process clause confers upon the taxpayer have been afforded him.
As best we decipher their arguments, Objectors contend they have a right to be heard (where is never made clear) on the question of whether the District reasonably needs the combined utility system it intends to construct and finance via the bond issue. Objectors have such right to be heard in a judicial forum only where they are charging the violation by the Dis- *1019 trict of some substantive provision of constitutional or statutory law. See In re Savannah Special Consolidated School District, 208 Miss. 460, 471-472, 44 So.2d 545, 548 (1950). Indeed, they have here been given every opportunity to litigate their constitutional claims. Moreover, Objectors as taxpayers in the district would certainly have standing to bring suit to enjoin a district project which may be ultra vires and beyond its authority.
It may well be that Objectors could have gone before the Commissioners of the District at or prior to the April 11, 1983, meeting, and made known their unhappiness, but nothing in our law gives them any right there to be heard. Nothing in Article III, Section 14, of our Constitution affords Objectors any basis for judicial relief from the validation of the bond though he may not have been afforded reasonable advance notice of the April 11 meeting and the opportunity there to be heard.
Fundamentally, Objectors wholly fail to grasp the distinction between legislative functions and judicial functions. Perhaps because we have become quite a rights conscious society (a development whose advent we generally regard as highly desirable), Objectors have lost sight of the political and otherwise wholly informal nature of their relationship with those public officials who perform legislative functions and exercise legislative powers.
We deal here with a subject matter within that governmental power generically labeled legislative. By resolution adopted April 11, 1983, the Board of Commissioners of the District
found and determined that it is necessary and in the best interest of the District and of those residing within its boundaries to provide the improvements ... [at issue].
The resolution further provided that
the Board does now find and determine that it is necessary and in the public interest that the aforesaid bond be issued. ...
Objectors’ discontent with these determinations is susceptible of redress through the political process only, saving only their due process right to be heard in a judicial forum on the constitutionality and ultra vires question and such other questions as touch the validity of the bond. In re Savannah Special Consolidated School District, 208 Miss. 460, 471-472, 44 So.2d 545, 548 (1950). This latter right has been afforded B.L. White and the others in great abundance.
We have heretofore held that the local and private act of 1966 validly provides for the creation of utility districts in Jackson County, Mississippi. The record reflects that the Gautier Utility District has been validly created in conformity with that act effective July 18, 1973. The improvements to be constructed, operated and maintained are wholly within the authorities lawfully vested in the District such clearly constitute a public purpose which may be effected by general taxation.
The scheme for repayment of the bonded indebtedness contemplates payment first out of the revenues to be generated by the operation of the utility system. If such revenues are insufficient, the District is then authorized to levy a special ad valo-rem tax not to exceed five mills “on all taxable property of the district”. In such a context, all that due process requires is that Objectors, as taxpayers, be accorded the opportunity, when their property is assessed generally, to dispute the accuracy, validity and proportionality of such assessment. Hutchins v. Board of Supervisors of Alcorn County, 227 Miss. 766, 780, 87 So.2d 54, 58 (1956); see also Fondren v. State Tax Commission, 350 So.2d 1329, 1333-34 (Miss.1977); State Tax Commission v. Fondren, 387 So.2d 712, 714 (Miss.1980).
Some sixty years ago there were several important federal due process decisions emanating from the Supreme Court of the United States. Compare Browning v. Hooper, 269 U.S. 396, 46 S.Ct. 141, 70 L.Ed. 330 (1925) with Valley Farms Co. v. Westchester, 261 U.S. 155, 43 S.Ct. 261, 67
*1020 L.Ed. 585 (1922). True, these cases do not constitute authoritative constructions of our constitution’s due process clause, and all federal questions have been withheld by Objectors for litigation in a federal forum via an England reservation; still, we have recognized the importance of these cases in the past in Hutchins v. Board of Supervisors of Alcorn County, 227 Miss. 766, 781-782, 87 So.2d 54, 59 (1956). They are useful by analogy here, particularly in that we have generally regarded Article III, Section 14 of our Constitution as essentially identical to the federal guarantee. See, e.g., Mississippi Power Co. v. Goudy, 459 So.2d 257, 261 (Miss.1984); NCAA v. Gillard, 352 So.2d 1072, 1081 (Miss.1977); Walters v. Blackledge, 220 Miss. 485, 515, 71 So.2d 433, 444 (1954).
The due process jurisprudence of these, to be sure, somewhat-dated federal cases is capsulized in Browning v. Hooper, 269 U.S. 396, 46 S.Ct. 141, 70 L.Ed. 330 (1925):
“Where a local improvement territory is selected and the burden is spread by the legislature or by a municipality to which the State has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. Valley Farms Co. v. Westchester, [261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585 (1922)] [other citations omitted]. But it is essential to due process of law that such owners be given notice and opportunity to be heard on that question where, as here, the district was not created by the legislature, and there has been no legislative determination that their property will be benefited by the local improvement.”
—269 U.S. at 405, 46 S.Ct. at 143, 70 L.Ed. at 334-35. [Emphasis supplied]
Though this language is not remarkable for its clarity, careful regard reveals the lack of merit in Objectors’ due process claims here.
Where the improvements to be constructed and maintained and the method of financing same are enacted by a political subdivision of the state which has been granted full legislative powers in the premises, the owners of property in that political subdivision have no due process right to be heard on the question of the desirability or feasibility of the project or the terms and provisions for its financing, unless, of course, the political subdivision at issue acts ultra vires. The Gautier Utility District having been vested with such authority in the premises, its generically legislative determinations that the proposed project is necessary and in the public interest are sufficient unto the day. See In re Savannah Special Consolidated School District, 208 Miss. 460, 469-470, 44 So.2d 545, 547 (Miss.1950).
We emphasize the provision in the taxing scheme at issue that the special levy shall be laid “on all taxable property in the district”. This case is thus wholly distinguishable from those wherein public improvements are to be financed in whole or in part from proceeds of special assessments levied on the property to be benefited. In such cases, by statute the property owners have a right to notice and the opportunity to be heard before the special assessments may be validly impressed upon their property. Hutchins v. Board of Supervisors of Alcorn County, 227 Miss. 766, 779, 87 So.2d 54, 57-58 (1956).
Having held that Objectors’ due process attack fails because the District’s offensive actions are wholly legislative in nature and well within the authority of the enabling legislation and because Objectors have otherwise identified no legitimate claim of entitlement which is protected by any provision of the law of this state, we will nevertheless address and dispatch in short order several so-called specific due process violations asserted in Objectors’ brief.
First, Objectors seem to be saying that due process requires a bond issue election. The fact that elections are provided for in other contexts we regard as wholly irrelevant. Objectors cite no authority for the proposition that due process requires an election whenever bonds are issued, and we know of none. Where no election is required by statute, none is required. *1021 Hutchins v. Board of Supervisors of Alcorn County, 227 Miss. 766, 783, 87 So.2d 54, 59-60 (1956); Lang v. Board of Supervisors of Harrison County, 114 Miss. 341, 351-353, 75 So. 126, 129-130 (1917).
Second, Objectors find a due process violation in the fact that the local and private act empowers the Board of Supervisors of Jackson County to levy a special tax not to exceed five mills without public notice while the general law of 1972 requires notice. How this difference in the two statutes becomes converted into a due process question escapes us. The point has no merit.
Third, Objectors point to a relatively incomprehensible due process violation in the vesting of the power of eminent domain in the board of commissioners of the Gautier Utility District. We have been unable to identify any eminent domain issue which is a part of this case. Gautier Utility District seeks to validate its bonds, not [at this time] to condemn anyone’s property. Beyond this, as explained above, the District has been granted the same eminent domain authority as other political subdivisions, no greater, no less.
Fourth, Objectors say they were entitled to notice before the legislature amended the local and private act to increase the interest rate authorizations to ten percent in 1980 and to 14 percent in 1982. To reiterate what we have said above, there is no due process right that vests in any citizen with respect to a legislative act. Such rights to appear and be heard as are provided by statute are all that there are.
The assignment of error to the effect that the local and private act of 1966 and the validation proceedings below somehow abridge rights said to be vested in Objectors under Article III, Section 14 of the Mississippi Constitution of 1890, is without merit and is denied.
VI. Alleged Errors of Fact In The Bond Transcript
A. The No Litigation Certificates
In preparation for the closing of any secured transaction, attorneys are commonly expected to ascertain that there is no threatened or pending litigation the final outcome of which might affect or upset the underlying obligation or the security. In the present context three no litigation certificates were issued, to-wit:
(a) On September 2, 1982, Lynn Presley, Chancery Clerk of Jackson County, certified that “there is no litigation now pending or threatened in any way involving the Gautier Utility District of Jackson County, Mississippi”.
(b) On April 12, 1983, Kenneth O. Smith, Secretary of the Board of Commissioners of the Gautier Utility District, issued a similar certificate to the effect that there was no pending or threatened litigation as of April 12, 1983.
(e) On April 21, 1983, Arthur F. Jerni-gan, Jr., State Bond Attorney, filed his opinion which included a similar certificate.
At the validation hearing the chancery court will necessarily consider whether in fact there is any pending or threatened litigation affecting the bond issue. Obviously, if the threat or pendency of any litigation is brought to the court’s attention, validation will be withheld until the matter can be resolved or at least until it be made to appear that there is no cloud over the validity or security of the bonds.
In this context, the no-litigation certificates form a part of the factual predicate for the chancery court’s performance of its duties at the validation hearing. In many validation hearings, particularly where there is no contest, the certificates which have been made a part of the bond transcript filed as required by Section 31-13-5 will be all the evidence the chancellor has on the subject. Here more has been presented.
Objectors charge that the certificates are false or were at best stale when presented at the May 30, 1983, hearing. The point escapes us. Objectors’ remedy in case of falsity or staleness is the same as that of any other litigant when faced at trial with *1022 such proof from an adversary: to present proof of their own to demonstrate the error in the information contained in the no litigation certificates, and in the proceedings below Objectors did just that.
Here the trial court and this court have been made aware of the pendency of an action in the United States District for the Southern District of Mississippi. In that action this same Objector, B.L. White, is one of the plaintiffs. There alleged are an assortment of supposed federal constitutional infirmities in the existence of the Gautier Utility District and its authority to issue this bond. Objectors have reserved such federal constitutional issues for litigation in the U.S. District Court, which in turn has stayed the matter pending the outcome of the instant proceedings. See, England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Those questions are not before us as no assignment of error has been predicated thereon. In short, we are wholly unable to understand how the staleness or inaccuracy of the no litigation certificates may be said to invalidate the bond. We now know of the pending federal litigation. Whether we learned of such through the certificates of counsel or otherwise is of no moment.
B. Miscellaneous Other Nonsense
Objectors complain of other so-called errors of fact in the bond transcript, over and above the supposedly fatal falsity of the no litigation certificates. These include the charge that all of the conditions imposed by FmHA incident to its agreement to finance the project have not been met and the charge that the District has not hired an “independent” consulting engineer.
These items amount to little more than foolishness if not harassment. Some of the conditions of the FmHA letter of August 30, 1982, cannot be met until these validation proceedings have been concluded. Others cannot be met until the District has acquired and is operating the combined utility system. In neither instance have Objectors pointed to any unfulfilled condition which would cast a cloud upon the validity and security of the bond.
Objectors follow foolishness with nonsense. They complain that the firm of Barth and Associates employed as consulting engineers on April 12, 1983, is not “independent” because it has done work for the District in the past and at present in other contexts. It is difficult to understand how the failure to employ an independent engineer could impact on the validity of the bond or its security. Objectors point not to any rule of law but to Section 14 of the bond resolution, which provides:
In order to insure the efficient and economical operation of the system and to insure the proper maintenance thereof in a sufficient operating order, the District covenants that it will employ an independent engineer or an engineering firm having a favorable reputation for skill and expertise in such work. Such engineer or engineering firm to act as a consulting engineer for the operation and maintenance of the system.
All this language requires is the employment of an engineering firm which as a matter of law operates vis a vis the District as an independent contractor. Barth and Associates clearly qualify. Nothing said here should be construed as a holding that employment of an independent engineering firm is a requisite to validity of the bond.
Objectors’ claims regarding so-called fact errors in the bond transcript go downhill from here; they are sufficiently frivolous that no mention is required. Suffice it to say that Objectors’ Assignment of Error predicated upon alleged errors of fact in the bond transcript is without merit and is denied.
V. Conclusion
By way of summary, we have carefully examined each assignment of error tendered by Objectors. Though some have been discussed above more fully than others, each has been wholly and finally determined without merit. By virtue of our decision today, we regard that the decree below validating the bond shall have the *1023 conclusive effect provided and intended by Miss.Code Ann. § 31-13-7.
AFFIRMED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and PRATHER, SULLIVAN and ANDERSON, JJ., concur.
HAWKINS and DAN M. LEE, JJ., specially concur.

. Objectors have brought a comparable action in the United States District Court for the Southern District of Mississippi, styled B.L. White as resident and property owner in the area encompassed by the purported Gautier Utility District of Jackson County, Mississippi v. Gautier Utility District of Jackson County, Mississippi, and Bob Stephens, Kenneth O. Smith and Gordon Ellingson in their capacity as Commissioners of said District, (No. F83-0437N). This action was filed May 27, 1983. The District Court stayed proceedings on June 21, 1984, pending the outcome of this state court action.

. Based on the record in this case, it appears as though B.L. White was joined as Objector by 139 other residents originally. Eighteen of this original 140 — including H.D. Robinson, President of the Martin Bluff Water Association — have requested their names be removed from the list of objectors and have decided to favor the utility district.

. There is in some of our older cases a certain amount of loose talk suggesting an obviously inappropriately restrictive scope of inquiry at a bond validation hearing. For example, there is dicta in Lincoln County v. Wilson, 125 Miss. 837, 88 So. 516 (1921), to the effect that no inquiry may be had in the question whether "the district was fraudulently organized”. 125 Miss. at 841, 88 So. at 517.
It may well be that the purported fraudulent organization of the district is precluded from litigation because the matter is time barred or because the matter has previously been determined consistent with due process. But such a matter is not beyond the scope of the bond validation proceedings because it is "collateral” for such a rule could lead to absurd and disastrous consequences when, subsequent to the purposed validation of the bonds, a successful attack on the legality of the organization of the district is mounted.
Another illustrative case is In Re Validation Of $175,000 General County Funding Bonds, 185 So.2d 420, 425 (Miss.1966). Objectors sought to attack the bond issue on the grounds that the proposed use of the money was prohibited by law. At various points in the opinion, the Court held (a) the Board of Supervisors’ announced purpose was not illegal, 185 So.2d at 424, (b) the issue was precluded because objectors failed timely to appeal the subject resolution of the board, 185 So.2d at 426, and (c) the issue tendered amounted to a collateral attack on the issuance of the bonds which was beyond the scope of a bond validation hearing, 185 So.2d at 424, 426.
Rejection there of the illegality issue on its merits or because it had not been preserved procedurally would be wholly consistent with today’s opinion. The suggestion that the issue constituted a collateral attack which ought not to be heard, however, is simply wrong. No political subdivision of this state has the authority to issue bonds to fund an illegal project. Common sense suggests that there is no more appropriate occasion to consider — and lay to rest once and for all — any claim of illegality (as distinguished from wisdom) of the project proposed to be funded that the bond validation hearing.
The case under consideration correctly states the law:
The attempt to bring into the .record by way of objections to the issuance of bonds the alleged illegal acts of the Board, which occurred prior to and are unrelated to the issuance of the bonds, is an [impermissible] attempt to attack the bond issue collaterally.
185 So.2d at 424-425.
The illegality vel non of the project proposed to be funded by the bond proceeds is, as a matter of law, as a matter of fact, or as a matter of common sense, not a matter "prior to and.... unrelated to the issuance of the bonds".

. As a housekeeping measure, we note that the Rolph decision at points appears to have been premised solely on Section 87. 346 So.2d at 379. Because the local and private law there at issue was for the benefit of a public entity, the Forrest County General Hospital, Section 87 by its literal terms would have no application.

. (1) Under the statewide law, the petition for incorporation of the district must certify whether the board of supervisors shall exercise authority to impose an ad valorem tax if there are shortfalls in revenue (§ 19-5-153(1)), whereas under the local and private law there need be no such certification (§ 1(a));
*1017 (2) if there is an election needed in order to form the district, the statewide law requires a three-fifths majority for passage (§ 19-5-159), whereas under the local and private law a simple majority is sufficient (§ 1(d));
(3) under the statewide law five commissioners are appointed for staggered terms of five years (§ 19-5-167), whereas under the local and private law there are only three commissioners appointed for staggered terms of six years (§ 2);
(4) under the statewide law, the board of supervisors may exercise the power of eminent domain for a utility district (§ 19-5-179), whereas under the local and private law it would appear that the district itself has the power of eminent domain (§ 9(b));
(5) under the statewide law there must be publication of a notice regarding the intention to issue bonds, there must be a hearing (for improvement bonds), and taxpayers can override the board’s decision through election (§§ 19-5-183 and 191), whereas under the local and private law bonds may be issued without publication of any notice beyond the spreading of the resolution upon the minutes of the board and there is no provision for publication, hearing, or other channel for taxpayer protest (§ 7(2));
(6) under the statewide law utility bonds may pay a maximum of 7⅜ per annum (§ 19-5-183(4)), whereas under the current 1982 amendment to the local and private law bonds may be issued at up to 14% per annum interest (§ 7(2));
(7) under the statewide law the sale of bonds is to be through sealed public bids except for sales to the government (§ 19-5-185), whereas under the local and private law there may be strictly private sales of bonds (§ 7(2));
(8) under the statewide law when there is a shortfall of revenues the supervisors may assess a tax of up to two mills on all taxable real property (§ 19-5-189), whereas under the local and private law it is the mandatory duty of the supervisors to levy an ad valorem tax of up to five mills on all taxable property (§ 7(3));
(9) under the statewide law districts must annually publish a sworn statement reflecting financial condition of the district and the rates charged (§ 19-5-207) and the rates may potentially be reviewed by the Public Service Commission (§ 19-5-177(e)), whereas under the private and local law the district may fix rates which shall not be subject to any review or regulation by any agency, board or commission of the State of Mississippi (§ 9(e)).

. We consider the due process issue on state grounds only. Objectors have tendered no issue under the due process clause of either the Fifth or Fourteenth Amendments to the Constitution of the United States. Objectors advise us that they do indeed believe that their federally secured due process rights have been abridged but have reserved such federal constitutional issues for litigation in a federal forum. See footnote 1 above and England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Under the circumstances we here adjudicate no federal issues.