493 So.2d 324 (1986)
Wilson G. BRANDON and Paul G. Smith,
v.
CITY OF HATTIESBURG, a Municipal Corporation.
No. 56773.
Supreme Court of Mississippi.
July 30, 1986.
Jack B. Weldy, Hattiesburg, for appellants.
Arthur F. Jernigan, Jr., Bacon, Jernigan & Martin, Jackson, Paul Richard Lambert, Hattiesburg, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This industrial park bond validation proceeding turns on whether the City of Hattiesburg may lawfully proceed under a local and private act which dispenses with the necessity for a bond issue election, except upon petition of ten percent of the City's registered voters.
Scrutinizing the local and private act under Article 4, Sections 87-90 of our Constitution, we find it within the authority of the legislature to enact. The City of Hattiesburg of right might proceed under it, as the City has elected to do. We affirm.

II.
These proceedings were commenced on December 3, 1984, when Wilson G. Brandon and Paul G. Smith filed their complaint in the Chancery Court of Forrest County, Mississippi, seeking injunctive and declaratory relief with respect to the City of Hattiesburg's plans to issue general obligation bonds in the principal amount of $1,100,000.00 to finance acquisition of suitable land to be used as an industrial park.
*325 Thereafter, on March 6, 1985, the City of Hattiesburg commenced in the same Chancery Court bond validation proceedings. See, Miss. Code Ann. §§ 31-13-5, et seq. (1972). The declaratory judgment and bond validation proceedings were consolidated for trial. Compare In Re Validation of $7,800,000.00 Combined Utility System Revenue Bond, Gautier Utility District, Jackson County, Etc., 465 So.2d 1003, 1011-15 (Miss. 1985) (hereinafter "Gautier Utility District"). After much squabbling regarding the scope of the litigation, the consolidated matters proceeded to hearing on the merits, and on March 29, 1985, the Chancery Court filed its decree validating the general obligation industrial bonds and dismissing the declaratory judgment/injunctive action. This appeal has followed.

III.
At issue here is the City's claimed authority to proceed in issuance of general obligation industrial park bonds under Chapter 886, Local & Private Laws of Mississippi, Regular Session 1984 (herein "the local & private act"), Section 6 of which requires that a bond issue referendum election regarding such matter be held upon timely petition of ten percent (10%) of the qualified electors of the City. Objectors Brandon and Smith produced petitions containing the names of 1,979 putative voters, only to find that their request for an election was denied as more than a thousand voters short.[1]
Objectors argue that the City had no authority to proceed under the local and private act, inasmuch as the general laws of this state provide for a bond issue referendum election without reference to any such petition. The general law does so provide.
General legislation regarding industrial parks enacted originally in 1960, has been codified as Miss. Code Ann. §§ 57-5-1, et seq. (1972). We find it expressly provided, in Section 57-5-19, that
... municipalities ... shall be governed in holding municipal elections, in the issuance of municipal bonds, ... by the same conditions, terms and laws applicable to the issuance of industrial bonds as authorized and provided by Sections 57-1-1 to 57-1-51, ... .
Turning to the referenced statutes, we find that Section 57-1-25 in no way conditions the municipality's obligation to hold an election upon the filing of a petition signed by a certain percentage of the registered voters. Section 57-1-25, providing no discretion, requires that an election be called. Section 57-5-19 employs the mandatory "shall" and provides that municipalities "be governed in holding municipal elections, in the issuance of municipal bonds, ... [for industrial park purposes] by the same conditions, terms and laws ... provided by Section 57-1-25]". We find the conclusion inescapable that general law allows no discretion with respect to the calling of an election for an industrial park bond issue such as that contemplated here: one must be called.
In their briefs and at oral argument, the parties erroneously centered their attention on the election provisions of Miss. Code Ann. § 21-33-307 (Supp. 1985). That statute requires that an election be called
if ten percent of the qualified electors of the municipality, or fifteen hundred, whichever is the lesser, shall file a written protest against the issuance of such bonds... .
Objectors claim this statute is applicable and say that the 1979 signatures they tendered more than exceed the minimum 1500 proviso of Section 21-33-307.
The problem is that the requirements of Section 21-33-307 are unmistakably tied to the purposes enumerated in Section 21-33-301; that is, the "ten percent, or 1500, whichever is lesser" rule for calling an election is enforceable only when a municipality *326 purports to issue bonds for one of the purposes enumerated in Section 21-33-301. Sixteen general categories of purposes may be found in this statute. Miss. Code Ann. § 21-33-301(a)-(p) (Supp. 1985). None is so elastic that it might be stretched to include industrial park purposes remotely related to those contemplated by the City of Hattiesburg in the case at bar. Objectors hardly suffer from this miscue, as the mandatory election provision of Sections 57-5-19 and 57-1-25 are more favorable to them than Section 27-33-307.
Objectors' specific assignment of error is the Chancrey Court's refusal to order the City of Hattiesburg to hold a bond issue election. The predicate for this argument is necessarily that Section 6 of the local and private act, insofar as it authorizes the City of Hattiesburg to pretermit an election absent a petition signed by ten percent of Hattiesburg's registered voters, is unenforceable. Objectors ground this premise in Article 4, §§ 87-90 of the Mississippi Constitution of 1890, albeit without ever explaining exactly how the local and private act violates these constitutional provisions or even identifying the specific constitutional language said to be offended.
Miss. Const. Art. 4, § 87 provides as follows:
Section 87. No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this state; nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted.
This section, however, has been held repeatedly to apply only where there has been a local or private law enacted for the benefit of "private individuals or corporations". Gautier Utility District, 465 So.2d 1003, 1015-16 (Miss. 1985); In Re Validation of $15,000.000.00 Hospital Revenue Bonds, 361 So.2d 44, 48 (Miss. 1978); Feemster v. City of Tupelo, 121 Miss. 733, 743, 83 So.2d 804, 806 (1920). The prohibitions of Section 87 are wholly inapplicable to public entities such as the City of Hattiesburg.[2] Accordingly, nothing in the local and private act at issue here, Chapter 886, Local and Private Laws of Mississippi, Regular Session 1984, is rendered inoperative or unenforceable by Section 87.
Section 87 is not offended for the further reason that the local and private act in no way operates to "suspend" the general law. In Re Validation of $15,000,000.00 Hospital Revenue Bonds, 361 So.2d 44, 49 (Miss. 1978). The City of Hattiesburg could have proceeded under the general law had it so elected. The local and private act merely afforded the City "an alternative method of raising funds" for its industrial park program. Gautier Utility District, 465 So.2d 1003, 1017 (Miss. 1985).
Section 88 provides for the chartering of cities and towns and the formation of corporations and without dispute can have no application here. Section 89 prescribes the *327 procedure for enacting local and private legislation. Objectors present no argument in brief or at oral argument pointing to any aspect of the process by which Chapter 886 came into being which in any way runs afoul of Section 89.
This brings us to Section 90 which enumerates various matter with respect to which the legislature has no authority to enact local, private or special laws under any circumstances. Twenty-one categories of laws are reserved for general laws only. None of these, as we perceive them, comes close to being broad enough to encompass laws respecting the issuance of municipal bonds to finance the development, operation and maintenance of an industrial park. Contrast State ex rel. Pair v. Burroughs, 487 So.2d 220, 223 (Miss. 1986).
In sum, the assignments of error to the effect that the enactment of Chapter 886, the Local and Private Act at issue here, contravenes the provisions of Article 4, §§ 87-90 of the Mississippi Constitution of 1890 are without merit and are denied. The City of Hattiesburg has authority to proceed with the issuance of the general obligation industrial park revenue bonds under the local and private act.

IV.
We have carefully considered Objectors' other assignments of error and find none either with merit or in need of discussion. One final comment, however, should be made. Throughout the record and the papers before us there is the inference of nefarious dealings between city officials and financial institutions regarding the ultimate plans of the City of Hattiesburg once the bonds are sold. Intimating no view regarding the merits of these charges, we regard them as beyond the scope of issues properly before the Court in this combined bond validation and declaratory judgment proceeding. See Gautier Utility District, 465 So.2d 1003, 1011-15 (Miss. 1985). Hypothetically and specifically, the mayor may well, once the proceeds of the bond sale have been obtained by the City and in the course of the development of the industrial park, plan to manipulate matters so that property in which he has an interest is purchased and used for industrial park purposes may contravene other laws. But that is not a fact of relevance in the present proceedings. No doubt there will be a day and a forum wherein Objectors might assert their true grievances, if they so choose. That forum is not this action and that day is not this day and, of course, nothing said here operates as res judicata or collateral estoppel with respect to any matters which we have held beyond the scope of today's proceedings.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., dissents.
SULLIVAN, J., not participating.
NOTES
[1] The City of Hattiesburg at the time had 30,419 qualified electors, ten percent of which number is 3,042. 3,042 - 1,979 = 1063.
[2] Gautier Utility District, 465 So.2d 1003, 1015-17 (Miss. 1985) included a discussion and reconciliation of a number of our cases in this area. E.g., In Re Validation of $15,000,000 Hospital Revenue Bonds, 361 So.2d 44, 48 (Miss. 1978); Rolph v. Board of Trustees of Forrest County General Hospital, 346 So.2d 377, 379 (Miss. 1977) (overruled on other grounds); Smith v. Transcontinental Gas Pipeline Corp., 310 So.2d 281, 285 (Miss. 1975); Feemster v. City of Tupelo, 121 Miss. 733, 743, 83 So. 804, 806 (1920). We reaffirm that reconciliation.

State ex rel. Pair v. Burroughs, 487 So.2d 220 (Miss. 1986) is in no way inconsistent. The local and private act found offenseive in Pair contravened Miss. Const. Art. 4, § 90(o) (1980). As indicated above, nothing in Section 90(o) or any other subsection of Section 90 proscribes the local and private act with which we are here concerned. Furthermore, the offenseive statute in Pair was enacted as a general law, applying to all counties in which U.S. Interstate Highway I-59 intersected with U.S. Highway 84, etc. The Court correctly found this a sham and treated the act as one local and private. Presumably, the Pair act was not enacted in conformity with the procedural requisites of Miss. Const. Art. 4, § 89 (1890), and for that additional reason was unenforceable.