## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2000-CA-00626-SCT

*WILEY A. BOND, THOMAS A. BOURNE, CLOVIS BROOME, THERESA T. CONERLY, CLIFTON HOLMES, LINDA POOLE, ARNOLD ROBERTS, CHARLES L. ROGERS, EDWARD STRINGER, JAMES L. TOLAR AND MILLARD VAN*

*v.*

*THE MARION COUNTY BOARD OF SUPERVISORS, LLOYD G. JOHNSON, INDIVIDUALLY AND OFFICIALLY, HOY W. STRINGER, INDIVIDUALLY AND OFFICIALLY, BILLY RAY MCKENZIE, INDIVIDUALLY AND OFFICIALLY, LLOYD IRVIN FORTENBERRY, INDIVIDUALLY AND OFFICIALLY, JOHNNY GLENN STRINGER, INDIVIDUALLY AND OFFICIALLY, MARION COUNTY ECONOMIC DEVELOPMENT DISTRICT, MAURICE DANTIN, INDIVIDUALLY AND OFFICIALLY, WILLIAM A. PITTMAN, INDIVIDUALLY AND OFFICIALLY, JAMES W. ROBBINS, INDIVIDUALLY AND OFFICIALLY AND THE CITIZENS BANK OF COLUMBIA*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2000 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KIM T. CHAZE |
| ATTORNEYS FOR APPELLEE: | DAVID P. ELDRIDGE |
| | SAMUEL W. KEYES, JR. |
| | TOMMIE SULLIVAN CARDIN |
| | S. ROBERT HAMMOND, JR. |
| | JOSEPH M. SHEPARD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/13/2001 |
| MOTION FOR REHEARING FILED: | 1/11/2002; denied 2/28/2002 |
| MANDATE ISSUED: | 3/7/2002 |

**BEFORE PITTMAN, C.J., SMITH, P.J. AND WALLER, JJ.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Wiley A. Bond and other residents of Marion County (collectively referred to as "Bond") brought this action in the Marion County Circuit Court challenging the authority of the Marion County Board of Supervisors ("the Board") and the Marion County Economic Development District ("EDD") to finance an economic development project with funds borrowed directly from Citizens Bank of Columbia, Mississippi. The case was decided by Circuit Judge William Coleman on countervailing motions for summary judgment. Bond's motion for summary judgment was denied, and the motions of the Board, the EDD, and Citizens Bank were granted.

### STATEMENT OF FACTS

¶2. The financing efforts at issue in this case began in January 1995 when Hood Cable Company ("Hood") expressed an interest in locating a manufacturing facility in Marion County. The Board and the EDD were first notified of the potential project at a meeting held January 27, 1995. The Board and EDD were informed at the meeting that Hood required a facility within a three-month time period. According to a follow-up letter from the Board to the EDD, because of the limited time schedule, there was no time in which to locate a suitable site for the facility, prepare specifications for the facility, advertise for public bids, and receive public bids. In the letter, the Board stated that Thomas L. Wallace had agreed to construct the facility at his expense on a parcel of land owned by Wallace and that the Board had, in turn, agreed to enter into a lease-purchase agreement with Wallace. In the letter, the Board stated that it would pursue two financing options: (1) Pursuant to Miss. Code Ann. § 19-5-99 (2000), the Board would seek to issue general obligation industrial development bonds in an amount not to exceed $3,000,000, the proceeds from the sale of the bonds to be used to purchase the property from Wallace; and (2) The Board would seek to introduce local and private legislation seeking authority for the EDD to borrow the necessary funds to purchase the property from Wallace.

¶3. On January 27, 1995, the EDD requested that the Board issue bonds in an amount not to exceed $3,000,000 for the purpose of acquiring an industrial building to be leased to Hood. Wallace began construction of the site sometime in late January 1995. On February 6, 1995, the Board adopted two resolutions. The first resolution declared the Board's intent to issue general obligation bonds pursuant to § 19-5-99 and afforded the public the opportunity to file a protest. The second resolution requested that the Legislature enact local and private legislation, authorizing the EDD to borrow an amount not to exceed $3,000,000. Wallace completed the facility in late February. Wallace and the EDD executed a lease and option to purchase agreement on February 27, 1995, in which it was agreed that the EDD would lease the facility from Wallace until such time as the EDD could purchase the property. On March 6, 1995, the Board adopted a resolution acknowledging receipt of written protests against the bond issue.

¶4. On April 4, 1995, the Board called for a special election on the bond issue to be held on May 9, 1995. On April 5, 1995, Joseph Shephard, attorney for the Board, requested an opinion from the Office of the Attorney General as to whether the EDD had the independent authority to borrow money pursuant to § 19-5-99. The request did not query regarding the EDD's authority under the proposed local and private legislation.

¶5. On April 6, 1995, the legislature passed Senate Bill No. 3269 ("S.B. 3269"), which stated, in part:

> Section 1. In addition to any other power conferred upon the Marion County Economic Development District, the district, in its own name, upon receipt of approval of the Board of Supervisors of Marion County, Mississippi, is authorized and empowered to borrow money, and contract for the borrowing of money, in the total aggregate amount of Three Million dollars ($3,000,000.00) on such terms and conditions as the trustees deem to be in the best interest of the district. The loans may be evidenced by promissory notes issued by the district; but no promissory note or other evidence of indebtedness shall be issued which has a final maturity date of more than twenty (20) years from the date of issue. The district may give as security for the payment of any indebtedness deeds of trust and mortgages on all or any part of the real estate and chattels of the district. This authority to borrow money shall be in addition to the authority of the county to issue full faith and credit general obligation bonds as elsewhere provided.

¶6. The special election on the bond issue was held May 9, 1995, and the requisite 60% vote necessary to approve the issue was not attained. *See* Miss. Code Ann. § 19-9-17 (2000). On May 17, 1995, the Attorney General responded to Shephard's request, stating that § 19-5-99 did not give the EDD authority to borrow funds. The opinion, however, did not address S.B. 3269.

¶7. The Board proceeded with the financing method afforded by S.B. 3269. The EDD borrowed $2,512,000 from Citizens Bank to purchase the land and building from Wallace. The EDD in turn leased the land and building to Hood for a term of years.

¶8. On June 3, 1997, Bond filed a complaint in the Marion County Circuit Court against the Board, the EDD, members of the Board and the EDD, individually and in their official capacities, and Citizens Bank. Count I of Bond's complaint alleged that the actions of the Board, the EDD, and Citizens Bank violated his rights to equal protection and due process as guaranteed by the United States and Mississippi Constitutions and 42 U.S.C. § 1983. Count II alleged that S.B. 3269 violates the due process guarantees of the United States and Mississippi Constitutions as well as Art. 4, §§ 87, 90, and 183 of the Mississippi Constitution. Bond requested that the court enjoin the County from borrowing the money from Citizens Bank, declare void the purchase of the property and the lease to Hood, declare S.B. 3269 unconstitutional, and award actual and punitive damages and attorneys' fees pursuant to 42 U.S.C. § 1983.

¶9. Bond, the Board and the EDD, and Citizens Bank each filed motions for summary judgment. Bond argued in his motion that S.B. 3269 was unconstitutional and that the actions of the Board and Citizens Bank violated procedural and due process guarantees. The Board and the EDD argued that no constitutional deprivation occurred and that the members of the Board and the EDD are entitled to legislative immunity and, in the alternative, qualified immunity. Citizens Bank argued that it is not a state actor and that no constitutional deprivation occurred.

¶10. The circuit court denied Bond's motion for summary judgment and granted the motions of the Board and the EDD and Citizens Bank. In its opinion, entered March 22, 2001, the court concluded that S.B. 3269 is valid local and private legislation adopted pursuant to Art. 4, §§ 87-90 of the Mississippi Constitution and that it served as valid, legal authority for the financing method pursued by the Board. The court, therefore, found that the Board's decision to proceed under S.B. 3269 was acceptable and not subject to judicial review. The court found that Bond had been deprived of no property interest. The court rejected Bond's claim under 42 U.S.C. § 1983, stating that Bond failed to show any constitutional deprivation caused by the practice of the defendants in their official capacities. The court also found that the members of the Board and the EDD were entitled to legislative immunity and qualified immunity.

¶11. Bond timely filed a notice of appeal on April 7, 2000. Aggrieved by the judgment of the circuit court, Bond raises the following issues:

> **I. BOND HAS A PROPERTY INTEREST IN THE RESULTS OF THE SPECIAL ELECTION.**
>
> **II. THE WRONGFUL ACTIONS OF THE BOARD AND THE EDD VIOLATED BOND'S CONSTITUTIONAL RIGHTS TO PROCEDURAL AND SUBSTANTIVE DUE PROCESS.**
>
> **III. LOCAL AND PRIVATE LEGISLATION CANNOT BE USED AS AN INSTRUMENT**

**TO VIOLATE DUE PROCESS GUARANTEES.**

**IV. *BOGAN v. SCOTT-HARRIS* DOES NOT PROVIDE IMMUNITY TO THE MEMBERS OF THE BOARD AND THE EDD IN THEIR INDIVIDUAL CAPACITIES.**

## STANDARD OF REVIEW

¶12. This Court employs a *de novo* standard of review of a lower court's grant of a summary judgment motion. ***Saucier v. Biloxi Reg'l Med. Ctr.***, 708 So. 2d 1351, 1354 (Miss. 1998) (citing ***Townsend v. Estate of Gilbert***, 616 So. 2d 333, 335 (Miss. 1993)). Furthermore, the parties have stipulated to the facts. Since questions of law are all that remain at issue, this Court will conduct a *de novo* review. ***Croke v. Lowndes County Bd. of Suprervisors***, 733 So. 2d 837, 839 (Miss. 1999) (quoting ***Estate of Bodman v. Bodman***, 674 So. 2d 1245, 1248 (Miss. 1996)).

## DISCUSSION

### I. BOND HAS A PROPERTY INTEREST IN THE RESULTS OF THE SPECIAL ELECTION.

¶13. Bond argues that the Board's actions are in violation of his rights secured by Art. III, § 14 of the Mississippi Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. A prerequisite to this Court's analysis of an alleged due process deprivation is the finding of an entitlement created and protected by the positive law of this state. ***White v. Gautier Utility Dist.***, 465 So. 2d 1003, 1018 (Miss. 1985). *See also* ***Bishop v. Wood***, 426 U.S. 341, 344 (1976) (stating that the sufficiency of the claim of entitlement must be decided by reference to state law).

¶14. Bond argues that he has a property interest in the results of the special election. Bond maintains that he is entitled to receive the benefit of the election which determined that he, as a taxpayer, should not have to pay for the Hood project. He alleges that the defeat of the bond issue in the election prohibits the financing of the project in any manner whatsoever. The circuit court found that Bond's assertion of a possible change of taxes is not sufficient to create a right of which he was deprived. This Court agrees.

¶15. According to S.B. 3269, the Board may levy a special tax, not to exceed three mills, upon all taxable property in the county for the purpose of retiring the indebtedness at issue. The bill requires notice by publication of any resolution to levy such a tax, and also states that if twenty percent of electors in the county file written protests against the assessment, an election on the question of the levy must be called. Where a majority of the electors do not vote in favor of the tax, the tax cannot be levied. This Court has stated that a taxpayer "has a due process right to challenge the accuracy and proportionality of the assessment and taxation of his property." ***Gautier Utility Dist.***, 465 So. 2d 1003, 1008 (Miss. 1985).

¶16. There is no evidence in the record that the Board has sought to levy a special tax pursuant to S.B. 3269. As observed by the circuit court, Bond has made a vague assertion that his property taxes will be increased by the actions of the Board at some point in the future. He is not challenging the accuracy nor the proportionality of an actual assessment of his property.

¶17. Bond asserts that Miss. Code Ann. § 19-9-17 (2000) creates an entitlement to the benefits of the election result. Section 19-9-17 provides that bonds shall not be issued unless three-fifths of the voters vote in favor of the bond issue. Bond fails to recognize that the voters of Marion County have received the

benefit of the election result as no bond issue occurred.

¶18. As provided in *Gautier Utility District*, should the Board actually levy the special tax on property in the county, Bond is entitled to an opportunity to dispute the accuracy, validity and proportionality of the assessment. *See Gautier Utility Dist.* at 1019 (citing *Hutchins v. Bd. of Supervisors of Alcorn County*, 227 Miss. 766, 780, 87 So. 2d 54, 58 (1956)). Furthermore, should the Board seek to levy the special tax, Bond has the ability, prior to seeking review in a judicial forum, to dispute the tax in accordance with the procedures outlined in S.B. 3269. However, at the time Bond filed this action, no special tax had been levied, and he had no property interest affected by the Board's actions. Again, any entitlement Bond had in the outcome of the election was left intact in that no bond issue occurred.

¶19. Nevertheless, Bond does have a due process right to be heard in a judicial forum regarding his allegations that S.B. 3269 is unconstitutional and that the Board, therefore, acted outside the authorities conferred by the legislature in utilizing the method of financing at issue. *Gautier Utility Dist.* at 1018-19 (citing *In re Savannah Special Consol. School Dist.*, 208 Miss. 460, 471-72, 44 So. 2d 545, 548 (1950)). Indeed, Bond has been given the opportunity to litigate these claims, and they are addressed below in issues II and III.

### II. THE WRONGFUL ACTIONS OF THE BOARD AND THE EDD VIOLATED BOND'S CONSTITUTIONAL RIGHTS TO PROCEDURAL AND SUBSTANTIVE DUE PROCESS.

¶20. Bond argues that the actions of the Board violate procedural and substantive due process guarantees. Bond asserts that the Board's conduct was deliberately intended to circumvent the election results. Again, Bond argues that because the Bond issue was defeated, the Board was prohibited from financing the Hood project in any manner that would require the county's taxpayers to fund the project. The actions complained of include the Board's failure to receive bids prior to financing the project, the Board's refusal to follow the opinion of the Attorney General, and the Board's determination to seek financing pursuant to S.B. 3269.

¶21. Bond complains that the Board failed to solicit competitive bids prior to financing the project at issue. Bond asserts that Miss. Code Ann. § 19-5-99(3)(b) (Supp. 2000) requires that the construction of the Hood facility should have been publicly bid and advertised. Section 19-5-99(3) provides, in pertinent part:

(a) Any economic development district established under this section shall have the authority to acquire by gift, purchase or otherwise, and to own, hold, maintain, control and develop real estate situated within the county or counties comprising such district for the development, use and operation of industrial parks or other development purposes.

(b) Contracts for the construction, improvement, equipping or furnishing of an industrial site and improvements thereon as authorized in this section shall be entered into upon the basis of public bidding under Section 31-7-1 et seq.

The circuit court found that this statute does not require public bidding for the project at issue because the EDD acquired the facility after its construction and leased it back to the industry. Accordingly, the Board argues that § 19-5-99 requires public bidding only where the county actually constructs the facility and then turns it back over to the private operator.

¶22. This is a question of first impression for this Court, though the Attorney General has issued numerous

opinions regarding this precise question. The Attorney General has opined that § 19-5-99(3)(b), by its express language, does not require public bidding for the acquisition of an existing building or structure. Rather, the Attorney General has stated that an economic development district has the authority to acquire a facility after its construction and in turn lease it back to the particular industry without soliciting competitive bids. 93-0851 Op. Att'y Gen. (Nov. 24, 1993); Op. Att'y Gen., 1990 WL 548061 (Sept. 25, 1990); Op. Att'y Gen., 1986 WL 82073 (Dec. 11, 1986).

¶23. It is evident from the record that the Board conferred with Wallace prior to the construction of the facility and that the county did not construct the facility itself because the limited time period required by Hood did not allow time for location of a suitable site, development of specifications, and solicitation of bids. However, the record also demonstrates that the lease and option to purchase agreement entered into with Wallace was executed after the building had been completed, and the funds sought by both the proposed bond issue and pursuant to S.B. 3269 were clearly in contemplation of the acquisition of the facility, not its construction. Miss. Code Ann. § 31-7-1(g) (2000) defines "construction" as "the process of building, altering, improving, renovating or demolishing a *public* structure, *public* building, or other *public* real property." (emphasis added). The facility constructed by Wallace was a privately owned building constructed on private property. In accordance with the clear and express language of § 19-5-99(3)(b) and § 31-7-1(g), the Board was not required to solicit competitive bids prior to entering into the lease and option to purchase agreement with Wallace.

¶24. Bond also complains that the Board acted arbitrarily by ignoring the opinion of the Attorney General. He contends that § 19-5-99 did not authorize the EDD to directly borrow funds. This argument is without merit. The request submitted to the Attorney General by the Board's attorney specifically inquired whether, under § 19-5-99, the EDD had the authority to borrow money, and the Attorney General's opinion limited itself to that inquiry. The opinion was requested on April 5, 1995, prior to the to passage of S.B. 3269 on April 6, 1995. The opinion, issued May 17, 1995, did not address S.B. 3269. In acting pursuant to S.B. 3269, the Board did not act contrary to the opinion of the Attorney General.

¶25. Finally, Bond argues that the Board's determination to seek financing pursuant to S.B. 3269 violated his due process rights by denying him the results of the bond election. Again, Bond received the results of the bond election - that is, no bond issue occurred. Furthermore, this Court has stated, "Where no election is required by statute, none is required." *Gautier Utility Dist.*, 465 So. 2d at 1020. S.B. 3269 requires no election. The Board cites numerous methods of financing available to public bodies which do not require elections as a condition precedent to implementation: Miss. Code Ann. § 21-45-1 (1990), et seq. (authority to issue Tax Increment Financing Bonds); Miss. Code Ann. § 43-35-1 (2000), et seq. (authority to issue Urban Renewal Bonds); Miss. Code Ann. § 17-21-51 (1995), et seq. (authority to issue short-term notes); and Miss. Code Ann. § 57-10-201 (1996), et seq. (authority of Mississippi Business Finance Corporation to issue tax-exempt Industrial Development Revenue Bonds). The election results do not prohibit the Board from seeking alternative financing through legislative means so long as the legislative authority granted is constitutional.

¶26. Taxpayers have no due process right to be heard on the question of desirability or feasibility of public improvement projects and the provisions for financing of such projects by a political subdivision, which has been granted full legislative powers in the premises, unless the political subdivision acts ultra vires. *Gautier Utility Dist.* at 1020. The actions of the Board were not beyond its powers. Where a political subdivision covered by the local and private act has alternatives in that they may proceed under either that act or the

general law, the election so made is not subject to judicial review. *Id.* at 1008, 1017. *See also **Brandon v. City of Hattiesburg***, 493 So. 2d 324, 326 (Miss. 1986) (entity may elect to proceed under either general law or local and private act). The generically legislative determination of the Board, having been vested with full legislative authority in Marion County, that the proposed project was necessary and in the public interest and the determination to proceed under S.B. 3269 is not subject to due process challenge. *See **Gautier Utility Dist.*** at 1020 (citing ***In re Savannah Special Consol. School Dist.***, 208 Miss. 460, 469-70, 44 So. 2d 545, 547 (Miss. 1950)).

¶27. "But where the method of taking is ad valorem taxation levied generally and equally on all property in an entire taxing district, a property owner's due process rights are thought satisfied when he is afforded a reasonable procedure for challenging the accuracy and equity of the valuation of his property and the computation of his tax." ***Gautier Utility Dist.*** at 1018. *See also **State Tax Comm'n v. Fondren***, 387 So. 2d 712, 714 (Miss. 1980); ***Fondren v. State Tax Comm'n***, 350 So. 2d 1329, 1333-34 (Miss. 1977); ***Hutchins v. Bd. of Supervisors of Alcorn County***, 227 Miss. 766, 780, 87 So. 2d 54, 58 (1956). So long as the Board acted within the authorities conferred upon it by the Legislature and so long as Bond is afforded his day in court on the question of validation, rights conferred upon him by the due process clause have been afforded him. *See **Gautier Utility Dist.*** at 1018.

¶28. Again, no tax has been specially levied pursuant to S.B. 3269 to fund the project at issue. In the event the Board seeks to levy such a tax, S.B. 3269 provides for notice to taxpayers, acceptance of written protests, and an election. Due process also affords Bond a day in court to dispute the accuracy, validity and proportionality of the assessment. To date, Bond has not been denied due process.

### III. LOCAL AND PRIVATE LEGISLATION CANNOT BE USED AS AN INSTRUMENT TO VIOLATE DUE PROCESS GUARANTEES.

¶29. Bond argues that S.B. 3269 is unconstitutional and that, therefore, the Board could not legitimately rely on it as authority to pursue an alternative method to financing the Hood project. Specifically, Bond argues that S.B. 3269 violates Art. IV, § 87 of the Mississippi Constitution.

¶30. Section 87 of our constitution provides:

> No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this state; nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted.

Section 87 "has been held repeatedly to apply only where there has been a local or private law enacted for the benefit of 'private individuals or corporations.'" ***Brandon v. City of Hattiesburg***, 493 So. 2d 324 (Miss. 1986) (quoting ***Kerley v. City of Hattiesburg***, 361 So. 2d 44, 48 (Miss. 1978); ***Feemster v. City of Tupelo***, 121 Miss. 733, 743, 83 So. 804, 806 (1920)). Section 87 is wholly inapplicable to entities public in nature, such as the Board and the EDD. *See **Gautier Utility Dist.*** at 1016.

¶31. Apparently in an attempt to skirt the inapplicability of § 87 to the Board and the EDD, Bond argues that S.B. 3269 was enacted for the benefit of Wallace and Hood. This argument is specious. S.B. 3269 provides the Board with an alternative mechanism for funding. Its aim is not the appropriation of public

moneys for the benefit of Wallace or Hood. The record indicates that the Board sought to fund the Hood project because it would bring jobs to the residents of Marion County and benefit the County economically. The EDD was, in fact, formed for the purpose of developing industry in the County, and § 19-5-99 permits the EDD to acquire and develop real estate for this purpose. Certainly, Hood and Wallace may benefit indirectly from the Board's ability to fund the project. That fact, however, makes the project no less a public improvement project. The thrust of S.B. 3269 is the Board's ability to borrow money to finance industrial development projects for the benefit of the County.

¶32. In *Palmertree v. Garrard*, 207 Miss. 796, 43 So. 2d 381 (Miss. 1949), a taxpayer challenged as unconstitutional a local law which permitted a municipal water and electric commission to establish a retirement system for its employees. This Court rejected the taxpayers' allegation that the local law violated § 87, stating that the local law applied to and benefitted the municipality, not the individuals. *Id.* at 382. By the same token, S.B. 3269 applies to the Board, not to Wallace or Hood. In *Kerley v. City of Hattiesburg*, 361 So. 2d 44 (Miss. 1978), this Court cited favorably 64 C.J.S. Municipal Corporations § 1909 (1950), which states that constitutional prohibitions against the loan of money or credit by a municipality to or in aid of a corporation or individual do not apply where the project serves a public purpose and will benefit the public generally, even though it will incidentally result in benefit to an individual or private corporation. *Id.* at 50-51.

¶33. Bond also argues that S.B. 3269 further contravenes § 87 because it "suspends" the general law. If the act suspends the general law, it offends § 87; if it does not suspend the general law, § 89 of the Mississippi Constitution applies. *See Kerley* at 47. Bond asserts that S.B. 3269 suspends § 19-5-99(3)(b) and § 19-9-17.

¶34. As discussed previously, the public bidding requirements of § 19-5-99(3)(b) do not apply to the agreement entered into by the Board, which was for the acquisition of a facility subsequent to its construction. Even if § 19-5-99(3)(b) did apply to the acquisition of the facility, S.B. 3269 does not suspend the statute's operation as S.B. 3269 provides only for a method of financing. If bidding were required pursuant to § 19-5-99(3)(b) and § 31-7-13, S.B. 3269 does nothing to relieve the Board of its obligation to comply with those statutes.

¶35. Bond argues S.B. 3269 suspends § 19-9-17, which states, "Unless three-fifths (3/5) of the qualified electors who voted in such election shall have voted in favor of the issuance of such bonds, then such bonds shall not be issued." As discussed previously, § 19-9-17 has not been suspended, but rather has received its full operational effect as no bonds have been issued to fund the project at issue. S.B. 3269 clearly states that the authorization of the Board to borrow money is "in addition to the authority of the county to issue full faith and credit general obligation bonds as elsewhere provided."

¶36. The circuit court correctly concluded that § 87 has not been violated. Because S.B. 3269 does not suspend the general law, § 89 applies. *Kerley* at 47. Section 89 contains the guidelines in accordance with which a local or private bill must be passed. Bond does not contend that the Act was not passed in accordance with these guidelines, and this Court will not look to the journals of the legislature to determine whether the legislature complied with the provisions of § 89. *Haas v. Hancock County*, 183 Miss. 365, 374, 184 So. 812, 813 (1938). Section 89 expressly states that if a bill is passed in conformity with its requirements, "the court shall not, because of its local, special, or private nature, refuse to enforce it." This Court has recognized such, stating that if an act does not "suspend" the general law, "it was a matter for the

Legislature and this Court will enforce the legislative mandate..." ***Kerley*** at 48.

¶37. Bond argued in his complaint that S.B. 3269 violated Art. 4, § 90 as well. That section contains a list of twenty-one matters provided for by general laws only, none of which are applicable in the case sub judice. Bond makes no argument regarding § 90 in his brief to this Court.

¶38. Our case law supports the conclusion that S.B. 3269 does not offend §§ 87-90. In ***Gautier Utility District***, we addressed the taxpayers' challenge to the actions of a county utility district which proposed to issue revenue bonds to finance a water and sewage treatment system. The taxpayers attacked not only the powers of the district to issue bonds, but also its authority to act at all as, according to the taxpayers, the local and private act authorizing the creation of the district was unconstitutional. We held that the local and private act did not violate the constitutional scheme for the enactment of such laws contained in §§ 87-90. ***Gautier Utility Dist.*** at 1018. This Court stated:

> It is ingrained in us all that general laws are to be preferred over private laws. (citations omitted). Where Objectors' argument founders is in their failure to understand who in law is vested with the primary responsibility of determining whether a particular matter will be dealt with by general or local laws. Subject to the strictures mentioned above, that responsibility is vested in the legislature.... Under our constitutional scheme, there is no prohibition upon the Legislature's enacting upon a given subject matter by both a general law and a local and private law.

***Id.*** at 1017. The Court explained that the Legislature may enact upon a given subject matter by both a general law and a local and private law, so long as (1) the object and purpose of each act is consistent with the other; and (2) where the differences between them are primarily procedural and minor. ***Id.***

¶39. S.B. 3269 meets both requirements for constitutionality under this two-part test. First, Bond makes no argument that S.B. 3269 does not further the same general purposes and policies as the general law codified in § 19-5-99(4) (Supp. 2000), which permits the Board to issue bonds in the manner prescribed by Miss. Code Ann. § 19-9-5 (1995) et seq. Both S.B. 3269 and § 19-5-99(4) set forth financing methods which may be utilized by the Board to finance industrial development projects. Second, the differences between S.B. 3269 and the general law are primarily procedural or otherwise relatively minor. These differences concern the method for determining whether finances should be obtained and the method by which finances are obtained.

¶40. Bond complains that S.B. 3269 circumvents the taxpayers' right to vote on the Board's resolution to obtain financing. A similar argument was squarely addressed in ***Croke v. Lowndes County Bd. of Supervisors***, 733 So. 2d 837 (Miss. 1999). In ***Croke***, landowners sought a declaration that a local and private law creating a sewer district was unconstitutional. They argued that the law violated the second part of the ***Gautier*** test because it provided no process, as did the general law, for public input, public hearings, and, if a sufficient number of electors desired, an election. ***Id.*** at 840. The landowners complained that the denial of the right to notice, hearings, and an election cannot be considered a minor or relatively procedural difference. ***Id.*** We rejected this argument, stating that the fact that the law at issue took the determination that a sewer district was needed out of the hands of the landowners and placed in the hands of the Legislature did not constitute a change so substantive or major that would require this Court to find the law constitutionally invalid. ***Id.*** at 841.

¶41. ***Brandon v. City of Hattiesburg***, 493 So. 2d 324 (Miss. 1986), is also instructive. In ***Brandon***,

taxpayers objected to a bond issuance under a local and private act which dispensed with the necessity for a bond issue election, except upon petition of ten percent of the City's registered voters. The taxpayers argued that the City had no authority to proceed under the local and private act, where the general laws require an election without reference to a petition. This Court held that §§ 87 through 90 were not offended by the act. *Id.* at 327. We observed that § 87 was inapplicable to public entities such as the City of Hattiesburg. *Id.* at 326. We also noted that the act did not suspend the general law because the City could have proceeded under the general law had it so elected, and that the act merely afforded the City an alternative method of raising funds. *Id.* at 327 (citing *Gautier Utility District*, 465 So. 2d 1003, 1017 (Miss. 1985)).

¶42. In *Kerley v. City of Hattiesburg*, 361 So. 2d 44 (Miss. 1978), the general act of the legislature and the local and private act at issue provided alternative methods for raising funds for acquisition of hospital facilities in a municipality. In the face of a challenge that the local and private act was unconstitutional under § 87, this Court held that the local and private act provided to the city an alternative method of raising funds for the purpose of acquiring hospital facilities in that municipality. *Id.* at 49. The Court stated:

> Whatever mischief may lie in the passing of special bills or laws of the kind here involved (and it may be conceded that such acts are not wholesome as a rule), the Constitution in [§ 89] vests in the Legislature, and not the court, the function of deciding this question, and we cannot refuse to enforce any law because merely in our judgment a general law would be better than a special one. The legislature has been recognized by the Constitution makers as being the best equipped to deal with the wisdom of enacting special laws rather than general laws, except in cases specifically provided for in the Constitution.... [T]he Act provided the City . . . an alternative method of raising funds for the purpose of acquiring hospital facilities in that municipality. It is clear that the municipal government might have proceeded under the general law or, at its election, might have proceeded under the terms of the Local and Private Act.

*Id.* at 49.

¶43. The circuit court correctly determined that S.B. 3269 is constitutional. Statutes are presumed constitutional, and the burden is on the party challenging the constitutionality of a statute to demonstrate beyond all reasonable doubt that the legislation is unconstitutional. *State v. Mississippi Ass'n of Supervisors*, 699 So. 2d 1221, 1223 (Miss. 1997). Thus, the burden falls on Bond, not the Board, to demonstrate that the Legislature's determination to allow the Board an alternative method of financing was unconstitutional. Bond has failed to satisfy this burden.

### IV. *BOGAN v. SCOTT-HARRIS* DOES NOT PROVIDE IMMUNITY TO THE MEMBERS OF THE BOARD AND THE EDD IN THEIR INDIVIDUAL CAPACITIES.

¶44. Bond alleged in his complaint that the appellees acted under color of state law to deprive him of rights, privileges, or immunities secured by the Constitution in violation of 42 U.S.C. § 1983. The circuit court concluded that the members of the Board and of the EDD, named in their individual capacities, were entitled to absolute immunity as well as qualified immunity. In determining that the members were entitled to absolute immunity, the court relied on *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966 (1998), in which the United States Supreme Court held that local legislators are absolutely immune from suit under § 1983 for their legislative activities. *Id.* at 49, 188 S.Ct. at 970.

¶45. Bond argues that ***Bogan*** does not afford the members immunity because they are not local legislators. This argument is incorrect. ***Bogan*** involved an action against city officials. The fact that the case sub judice involves county officials makes ***Bogan*** no less applicable. In ***Bogan***, the Supreme Court, in reviewing and relying on the history of legislative immunity, cited favorably the treatise of Thomas Cooley, which stated that the pervasive view afforded immunity to members of "inferior legislative bodies, such as *boards of supervisors, county commissioners*, city councils, and the like." ***Id.*** at 51, 118 S.Ct. at 971 (quoting Cooley 376) (emphasis added). Furthermore, the Supreme Court also relied upon its holding in ***Lake Country Estates Inc. v. Tahoe Reg'l Planning Agency***, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), which held that members of an interstate regional planning agency were entitled to absolute legislative immunity. The ***Bogan*** Court stated:

> Although we expressly noted that local legislators were not at issue in [***Lake Country Estates***], we considered the regional legislators at issue to be the functional equivalents of local legislators, noting that the regional agency was 'comparable to a *county* or municipality' and that the function of the regional agency, regulation of land use, was 'traditionally a function performed by local governments.

***Bogan*** at 53, 118 S.Ct. at 972 (quoting ***Lake Country Estates*** at 401-402, 99 S.Ct. at 1177) (emphasis added).

¶46. Absolute immunity attaches to the actions taken by the Board "in the sphere of legitimate legislative activity." ***Bogan*** at 54, 118 S.Ct. at 972 (quoting ***Tenney v. Brandhove***, 341 U.S. 367, 376, 71 S.Ct. 783, 788 (1951)). Bond points to alleged motives of self-dealing in the Board's actions. "Whether an act is legislative turns on the nature of the act, rather than the motive or intent of the official performing it." ***Id. See also Jones v. Loving***, 55 Miss. 109, 30 Am.Rep. 508 (1877) (in determining whether individual members of municipal board can be made personally liable, this Court will not inquire into the motives which prompted their action). The actions of the Board in the case sub judice were clearly legislative. As the ***Bogan*** Court observed, acts of voting for legislation are "quintessentially legislative." ***Bogan*** at 55, 118 S.Ct. at 973. The members of the EDD passed resolutions stating the need for financing for the Hood project, seeking alternative financing, and obtaining financing pursuant to S.B. 3269. The members of the Board approved the requests of the EDD by passing their own resolutions. This Court has stated that the financing of public improvements is a matter "generically legislative." ***Gautier Utility Dist.*** at 1008, 1020 (citing ***In re Savannah Special Consol. School Dist.***, 208 Miss. 460, 469-70, 44 So. 2d 545, 547 (Miss. 1950). The steps taken by the Board were integral to the legislative process for which the members are entitled to absolute immunity.

¶47. The circuit court also found that, in addition to absolute immunity, the members, in their individual capacities, are protected by qualified immunity. Bond does not challenge this conclusion. The circuit court relied on ***Petta v. Rivera***, 143 F.3d 895 (5th Cir. 1998), in which a § 1983 claim was brought against a police officer for use of excessive force in violation of Fourth and Fourteenth Amendments. The Court in ***Petta*** explained that a defendant is entitled to qualified immunity where his actions are not objectively unreasonable. ***Id.*** at 899-900, 910. In the case at bar, the Board members acted pursuant to a law that purported to empower them to borrow money directly in order to finance the project at issue. Bond makes no effort to demonstrate that these actions were objectively unreasonable. The circuit court correctly found that the members, in their individual capacities, are entitled to qualified immunity.

### CONCLUSION

¶48. The circuit court's grant of summary judgment in favor of the Board, the EDD, and Citizens Bank is affirmed. Bond has not been deprived of a property interest. The results of the bond issue election were given their full effect as no bonds were issued. Though Bond complains that he, as a taxpayer, ultimately will be forced to pay for the financing of the Hood project, no tax has been levied by the Board, and, in the event the Board seeks to levy such a tax, S.B. 3269 grants numerous procedural protections to the taxpayers.

¶49. Furthermore, Bond has not been deprived of due process by the Board's actions. The Board was not required to solicit bids for the acquisition of the facility which it ultimately leased to Hood. Bond's vote against the bond issue has been given its full effect. Article IV, §§ 87-90 are not offended by S.B. 3269, and the circuit court correctly concluded that the legislation is constitutional. Where local and private legislation provided the Board an alternative method of financing, so long as that legislation is constitutional, the Board was entitled to proceed under either that local and private law or the general law. The election so made by the Board is not subject to judicial review.

¶50. Finally, because Bond has not been deprived of constitutional rights, his claim for damages pursuant to 42 U.S.C. § 1983 must fail as well. Additionally, the members of the Board and the EDD are entitled, in their individual capacities, to absolute and qualified immunity.

¶51. **AFFIRMED.**

**PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. McRAE, P.J., DIAZ AND EASLEY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., NOT PARTICIPATING.**