# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01712-SCT

*OXFORD ASSET PARTNERS, LLC*

*v.*

*CITY OF OXFORD, MISSISSIPPI AND STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/2006 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DANNY A. DRAKE |
| | DAVID W. MOCKBEE |
| ATTORNEYS FOR APPELLEES: | PAUL B. WATKINS, JR. |
| | POPE S. MALLETTE |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARY JO WOODS |
| NATURE OF THE CASE: | CIVIL - UNCONSTITUTIONAL STATUTE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 10/18/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This appeal is taken from the Lafayette County Circuit Court's dismissal of Oxford Asset Partners' request for a declaratory judgment that House Bill 1671 is unconstitutional and from the grant of summary judgment in favor of the City of Oxford. House Bill 1671 is a private law which enables the City of Oxford to obtain municipal parking facilities in exchange for the conveyance of air and development rights. H.B. 1671, Reg. Sess. (Miss.

2006).  Because we find the last sentences of Sections 3 and 4 of House Bill 1671 unconstitutional, we affirm in part and reverse and render in part the circuit court's grant of summary judgment to the City of Oxford.

**FACTS**

¶2.    On April 5, 2005, the Mayor and Board of Aldermen of the City of Oxford, Mississippi, ("the City") resolved to solicit proposals to increase the availability of parking in downtown Oxford.  The City published requests for proposals on April 8, 2005, and again on April 15, 2005.  After receiving three proposals, the City formed a committee to consider two of the three proposals, both of which contemplated the City conveying land to a private developer who would build a parking garage and a hotel.  The developer would then convey the parking garage back to the City.

¶3.    On August 18, 2005, following the withdrawal of one proposal, the City authorized the negotiation of a non-binding letter of intent with the remaining developer, Craigside Leasing Corporation of Greenwood, Mississippi ("Craigside").  The Craigside project consisted of a six-story structure on the parking lot behind City Hall, the first three floors of which would consist of a municipal parking garage, while the top three floors would be a hotel.  In exchange for the air and development rights to operate a hotel above the parking garage, Craigside would construct and then re-convey the parking garage to the City.  On October 10, 2005, the City executed a non-binding Preliminary Development Agreement with Craigside.

¶4.    To determine whether the proposal could be executed under the general laws of Mississippi, the City requested an opinion from the Attorney General's office regarding the

2

legality of the transaction.  In an opinion dated January 26, 2006, the Attorney General maintained that the construction of such a facility under the proposed agreement would violate existing general laws.  2006 WL 753077 (Miss. A.G.).

¶5.	In an attempt to address the Attorney General's opinion, Noel Akins, representative of House District 12, and Warner F. McBride, representative of House District 10, introduced House Bill 1671 during the 2006 Regular Session of the Mississippi Legislature.  H.B. 1671, Reg. Sess. (Miss. 2006).[1]  The bill authorized the City to negotiate with any public or private actor for the construction or expansion of municipal parking facilities in exchange for air and development rights.  The bill was signed into law on April 5, 2006.

¶6.	House Bill 1671, Section 2, expressly exempts the Mayor and the Board of Aldermen of the City of Oxford from the provisions of Mississippi Code Sections 21-37-23 and 21-37-25, which dictate the process to acquire and operate a municipal parking facility.  Miss. Code Ann. §§ 21-37-23, 21-37-25 (Rev. 2001).  House Bill 1671, Section 3, further exempts City officials from the restrictions in Section 21-17-1 governing the disposition of municipal property.  Miss. Code Ann. § 21-17-1 (Rev. 2001).  Finally, House Bill 1671, Section 4, exempts City officials from Section 31-7-13, which requires advertisements for bids on government projects.  Miss. Code Ann. § 31-7-13 (Rev. 2005).

¶7.	Oxford Asset Partners, LLC ("Oxford Asset") filed its complaint against the City on May 15, 2006, arguing that H.B. 1671 violates Article IV, Sections 87 and 90 of the Mississippi Constitution.  Oxford Asset notified the Attorney General of its constitutional

---

[1] Because local and private legislation is not as readily accessible as general laws, we have appended H.B. 1671 to this opinion.

challenge, as required by law, and the Attorney General joined the City's defense of H.B. 1671. The trial judge heard oral arguments on August 31, 2006. The trial judge dismissed Oxford Asset's request for declaratory judgment and granted summary judgment to the City on September 26, 2006.

## STANDARD OF REVIEW

¶8. This Court reviews a circuit court's grant of summary judgment de novo. *Myers v. City of McComb*, 943 So. 2d 1, 4 (Miss. 2006). In considering the constitutionality of a legislative enactment, this Court recognizes that duly enacted statutes and laws have a strong presumption of constitutionality, and that the party challenging the constitutionality of a law must prove beyond a reasonable doubt that the law is in "palpable conflict with some plain provision of the constitution." *In the Interest of T.L.C.*, 566 So. 2d 691, 696 (Miss. 1990). This Court will invalidate a statute on constitutional grounds only "where it appears beyond all reasonable doubt that such statute violates the constitution." *Richmond v. City of Corinth*, 816 So. 2d 373, 375 (Miss. 2002) (quoting *Wells v. Panola County Bd. of Educ.*, 645 So. 2d 883, 888 (Miss. 1994)).

## DISCUSSION

¶9. On appeal, Oxford Asset asserts that H.B. 1671 violates two provisions of the Mississippi Constitution. First, Oxford Asset argues that H.B. 1671 violates Article IV, Section 87 of the Mississippi Constitution by suspending multiple general laws for the benefit of a private entity. Second, Oxford Asset argues that H.B. 1671 violates Article IV,

4

Section 90 of the Mississippi Constitution by vacating public property in the form of air and development rights above a publicly owned parking garage.[2]

## I.  WHETHER HOUSE BILL 1671 OFFENDS ARTICLE IV, SECTION 87 OF THE MISSISSIPPI CONSTITUTION.

### A.  The Restrictions Placed Upon Private Laws by Section 87.

¶10.   Article IV, Section 89 of the Mississippi Constitution sets forth a procedure through which local and private legislation may be passed by the Legislature, and emphasizes that laws enacted pursuant to Section 89 must be given effect by this Court.  Miss. Const. art. IV, § 89 (1890).  At the same time, Article IV, Section 87 of the Mississippi Constitution limits the Legislature's authority to enact private legislation.[3]

¶11.   Oxford Asset argues that H.B. 1671 violates the second clause of Section 87, which prohibits the enactment of special or local laws that suspend any general law for the benefit of individuals or private corporations or associations.  Miss. Const. art. IV, § 87.  In order for a private law to offend the second clause of Section 87, the private law must: (1) suspend

---

[2] While Oxford Asset cites Article IV, Section 90, in its appeal, it does not cite any legal authority to support its position that H.B. 1671 violates this constitutional provision.  This Court is under no obligation to consider an issue where the party has failed to cite authority. *E.g.*, **Crenshaw v. Roman**, 942 So. 2d 806, 809 n.4 (Miss. 2006) (citing **Brown v. State**, 534 So. 2d 1019, 1023 (Miss. 1988)).

[3] Section 87 reads "No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this State; *nor shall the operation of any general law be suspended by the Legislature for the benefit of any individual or private corporation or association*, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted."  Miss. Const. art. IV, § 87 (emphasis added).

a general law or laws (2) for the benefit of an individual or private corporation or association. *Id*.

### B.   Whether House Bill 1671 Suspends any General Laws.

¶12.   We must first determine whether H.B. 1671 suspends any general laws. We previously have defined "suspend" under Section 87 as "[t]o interrupt; to cause to cease for a time; to postpone; to stay, delay, or hinder; to discontinue temporarily . . . ." *In re Validation of $15,000,000 Hospital Revenue Bonds v. City of Hattiesburg*, 361 So. 2d 44, 49 (quoting Black's Law Dictionary, (Revised 4th Ed. 1968)).

¶13.   Both Oxford Asset and the City concede that H.B. 1671 suspends general laws. Indeed, H.B. 1671 expressly renders Sections 21-37-23, 21-37-25, 21-17-1, and 31-7-13 of the Mississippi Code inapplicable. H.B. 1671, §§ 2-4, Reg. Sess. (Miss. 2006). We agree that H.B. 1671 suspends general laws.

### C.   Whether House Bill 1671 Benefits a Private Party.

¶14.   Because H.B. 1671 suspends general laws, we turn to the issue of whether the bill is "for the benefit of an individual or private corporation or association." Miss. Const. art. IV, § 87. Oxford Asset asserts that H.B. 1671 directly benefits a private entity by: (1) allowing the transfer of public property to a private entity without an objective determination of the value of the public property transferred; (2) permitting the construction of a parking garage by a private entity without the requirements of competitive bidding; and (3) conveying the air and development rights above public property in exchange for construction work with no regard for the value of the construction work. On the other hand, the City counters that H.B. 1671 is for the benefit of a municipality and therefore the prohibitions of Section 87 do not

6

apply. *See Brandon v. City of Hattiesburg*, 493 So. 2d 324, 326 (Miss. 1986) ("The prohibitions of Section 87 are wholly inapplicable to public entities such as the City of Hattiesburg."); *Greenwood v. Telfair*, 207 Miss. 200, 206-207; 42 So. 2d 120, 122 (1949) (Section 87 had no application to "a local and private law applying to a municipal corporation."); *Feemster v. Tupelo*, 121 Miss. 733, 743-744 (1920) (even though the effect of the private law may be to suspend the general law, "the prohibition [of Section 87] applies to private and not municipal corporations.").

¶15.    In determining the beneficiary of private or local laws, we consider: (1) to whom the legislation is directed or applied and (2) whether the aim or thrust of the bill is to benefit the public. *See Bond v. Marion County Board of Supervisors*, 870 So. 2d 1208, 1217 (Miss. 2001). We find that H.B. 1671 applies to the City and that the aim of the bill is to increase the availability of public parking for the City of Oxford. Each section of H.B. 1671 is directed or applied to the "governing authorities" of the City of Oxford. H.B. 1671, Reg. Sess. (Miss. 2006). Additionally, the bill is aimed at expanding parking facilities in order to meet the needs and expectations of the community. Accordingly, we hold that H.B. 1671 benefits the City of Oxford and that the benefit to any private party is indirect.

¶16.    Where private laws indirectly benefit private parties, we have further subjected the private laws to a two-part constitutional inquiry. *Bond*, 807 So. 2d at 1217-1219. In doing so, we have ensured minimal, yet necessary, constitutional restraints upon private laws that indirectly benefit private parties. We find these constitutional parameters to be of particular importance where private parties indirectly benefit from private laws.

    **D.    Whether House Bill 1671 Satisfies the *In Re Validation* Test.**

¶17.    The Legislature may suspend a general law by a private law that concerns the same subject matter so long as "(1) the object and purpose of each act is consistent with the other; and (2) where the differences between them are primarily procedural and minor." ***Bond***, 807 So. 2d at 1219 (*citing **In Re Validation of $7,800,000 Combined Util. Sys. Revenue Bond v. Gautier Util. Dist. of Jackson County***, 465 So. 2d 1003, 1017 (Miss. 1985)); ***Croke v. Lowndes County Bd. of Supervisors***, 733 So. 2d 837, 840 (Miss. 1999) (referred to as the "***In Re Validation***" test based on the case name from which the test was derived)).[4]

¶18.    The first prong of the ***In Re Validation*** test requires that the object and purpose of both the private law and the general law be consistent with each other. *See **Bond***, 807 So. 2d at 1219 (citing ***Gautier Util. Dist.***, 465 So. 2d at 1017). Having previously determined that the aim of H.B. 1671 is to benefit the public by facilitating the construction or acquisition of municipal parking facilities, we find that the special law furthers the same purposes as the general law.

¶19.    The second prong of the ***In Re Validation*** test requires that the differences between the general law and the private law be primarily procedural and minor. ***Id***. We find that

---

[4] The case in which the ***In Re Validation*** test originated applied the test to determine whether a local and private act could enact upon the same subject matter as a general law without offending our "constitutional scheme" in Sections 87-90. ***Gautier Util. Dist.***, 465 So. 2d at 1008, 1016-1017. In ***Croke***, this court applied the ***In Re Validation*** test to uphold a private law in the context of a broad, due-process challenge to the private law. ***Croke***, 733 So. 2d at 839-841. In ***Bond***, after analyzing the private law under Sections 87, 89, and 90 separately, we then applied the ***In Re Validation*** test and concluded that the private law did not offend the constitutional scheme of Sections 87-90. ***Bond***, 807 So. 2d at 1218-1220. Thus, the ***In Re Validation*** test has been used to determine whether private laws offend our constitutional scheme in Sections 87-90 and has been applied in due-process challenges to private laws.

Section 2 of H.B. 1671 passes muster, but that the last sentences of Sections 3 and 4 of the private bill fail the *In Re Validation* test.

¶20.    House Bill 1671, Section 2, expressly renders Section 21-37-23 of the Mississippi Code inapplicable.  H.B. 1671, § 2, Reg. Sess. (Miss. 2006).  In general, Section 21-37-23 authorizes a municipality to establish and operate a municipal parking facility, while H.B. 1671 both authorizes and sets forth means by which such a facility may be acquired.  H.B. 1671; Miss. Code Ann. § 21-37-23 (Rev. 2001).  Pursuant to H.B. 1671, the City ultimately seeks to exchange the air and development rights above a parking facility in exchange for the construction of the parking facility itself.  Eventually, in direct contrast to the prohibition in Mississippi Code Section 21-37-23, H.B. 1671 would allow a commercial enterprise to be on the same property as a municipal parking facility.  Miss. Code Ann. § 21-37-23 (Rev. 2001).

¶21.    We cannot say that permitting a commercial enterprise to occupy the same grounds as a municipal parking facility is such a major deviation from Section 21-37-23 as to render H.B. 1671 invalid.  We have previously upheld private laws that granted a utility district the authority to not only pay double the maximum per annum interest allowed under state law for utility bonds, but also relieved the district from any administrative review of rates charged by the district.  *Gautier Util. Dist.*, 465 So. 2d at 1017 n.5.   Allowing a commercial enterprise to be located on the same property as a parking facility is no more a substantive difference than what this Court previously has considered a minor change.  Accordingly, we find that the differences between H.B. 1671 and Section 21-37-23 are primarily procedural and minor.

9

¶22. House Bill 1671, Section 2, also eliminates procedural safeguards for the establishment of a municipal parking facility contained in Section 21-37-25 of the Mississippi Code. H.B. 1671, § 2, Reg. Sess. (Miss. 2006). These requirements include adoption of an ordinance declaring the necessity of a parking facility, publication of notice, a public hearing on the matter, and appellate procedures for aggrieved citizens. Miss. Code Ann. § 21-37-25 (Rev. 2001). While H.B. 1671 discards these procedures, we previously have found that the denial of a right to notice, hearings, and even an election were primarily procedural and minor. *Croke*, 733 So. 2d at 840 (private law circumvented procedures for public input, hearings, and even an election if one were found needed); *Gautier Util. Dist.*, 465 So. 2d at 1017 n.5 (private law permitted the issuance of bonds without publication of a notice, a hearing, or other manner for taxpayer protest). Based on our precedent, we find that the differences between H.B. 1671 and § 21-37-25 are primarily procedural and minor.

¶23. While Section 2 of H.B. 1671 satisfies the *In Re Validation* test, we find that the last sentences of Sections 3 and 4 of H.B. 1671 do not pass constitutional scrutiny. The last sentence of Section 3 in H.B. 1671 relieves the City from compliance with Section 21-17-1 of the Mississippi Code. H.B. 1671, § 3, Reg. Sess. (Miss. 2006). Section 21-17-1(2) sets forth a specific manner in which municipal real property may be sold, conveyed, or leased. Miss. Code Ann. § 21-17-1(2) (Rev. 2001). Section 21-17-1(2) initially sets forth general requirements for publication of notice of intent to sell or lease and provides that the lease or sale must go to the highest bidder. However, under certain conditions, Section 21-17-1(2) permits the conveyance of real property without the requirements of publication of notice and the acceptance of competitive bids. A municipality may convey municipally owned property

10

without having to comply with the advertisement or bid requirements if: (1) the property is no longer needed for municipal purposes; (2) the sale of the property as provided by law is not best for the financial well-being of the municipality; and (3) the purpose for which the property is sold will foster the "the development and improvement of the community" and the general welfare. Miss. Code Ann. § 21-17-1(2) (Rev. 2001).

¶24. While Section 21-17-1(2) allows the conveyance of municipal property without compliance with advertising or bid requirements, the municipality is not completely unrestrained. Section 21-17-1(2)(b)(i) requires that if the municipality does not follow the advertisement and competitive bidding process, the consideration for the conveyance "shall not be less than the average of the fair market price for such property as determined by three (3) professional property appraisers selected by the municipality and approved by the purchaser . . . ." Miss. Code Ann. § 21-17-1(2)(b)(i) (Rev. 2001).

¶25. House Bill 1671 seeks to relieve the City from not only the advertisement and bidding requirements, but also from the appraisal requirements of Section 21-17-1(2)(b)(i) which ensure that fair market price is obtained for the property. H.B. 1671, § 3, Reg. Sess. (Miss. 2006).

¶26. We find that rendering Section 21-17-1 inapplicable constitutes a substantive and major change. We recognize that Section 21-17-1(2) does not always require advertisement and competitive bidding. However, in exchange for relief from such requirements, Section 21-17-1(2)(b)(i) requires an appraisal to ensure that the conveyance is not for less than fair market value. The purpose of requiring competitive bidding in the conveyance of municipal property is to award the property to the highest bidder as a way of ensuring that the

11

municipality receives fair value, and thus protect against the waste of public funds. *See* Miss. Code Ann. § 21-17-1(2) (Rev. 2001). When public bidding requirements are relieved under Section 21-17-1(2), the appraisal requirements under Section 21-17-1(2)(b)(i) fill in the gap to ensure that at least fair market value is obtained.

¶27. House Bill 1671 strays too far from the general law of Section 21-17-1 by failing to ensure that the consideration received for the conveyance of municipal property is at least equivalent to fair market value. Under the transaction enabled by H.B. 1671, the consideration that would be received by the City is the construction of a parking facility in exchange for air and development rights above such parking facility. However, H.B. 1671 lacks any objective safeguards to ensure that the parking facility received by the City is at least equivalent to the fair market value of the air and development rights conveyed by the City.

¶28. House Bill 1671, Section 8, does state that in order to convey air and development rights above the parking facility, the City "shall" request, receive, and consider proposals "for the development of additional public parking." However, such proposals are considered not on the basis of ensuring that the City receives adequate value, but on vague notions that "the use of the air and development rights . . . will promote and foster the development and improvement of the city and the civic, social, educational, cultural, moral, economic, and industrial welfare thereof." H.B. 1671, § 8, Reg. Sess. (Miss. 2006).

¶29. We do not suggest or imply that the City has some ulterior motive for seeking to enter into any transaction pursuant to H.B. 1671. However, allowing private legislation to avoid significant safeguards opens the door for potential abuse and waste of public property. The

public interest associated with a municipality receiving fair value in the conveyance of public property–and the corresponding concern that the buyer or lessee may receive a windfall–is of such substantial importance that exempting H.B. 1671 from the requirements of Section 21-17-1 cannot be considered merely procedural and minor. Accordingly, the last sentence of Section 3 in H.B. 1671 fails the second prong of the *In Re Validation* test.

¶30.  Finally, the last sentence of Section 4 in H.B. 1671 relieves the City from compliance with Section 31-7-13 of the Mississippi Code, which contains the general bid requirements for construction contracts. H.B. 1671, § 4, Reg. Sess. (Miss. 2006); Miss. Code Ann. § 31-7-13 (Rev. 2005). House Bill 1671, Section 4, authorizes the City "in their discretion, to negotiate with public or private entities for the construction, enlargement, or expansion of parking facilities" when the City determines that it would "better serve the public interest."

¶31.  Even if the differences between H.B. 1671 and every other general law previously discussed in this opinion were found to be primarily procedural and minor, we find that rendering Section 31-7-13 inapplicable is substantial enough to cause the last sentence in Section 4 of H.B. 1671 to fail the second prong of the *In Re Validation* test. Public bidding requirements serve a number of significant purposes. We have noted that the purposes of competitive bidding are to "secure economy in the construction of public works and the expenditures of public funds . . . to protect the public from collusive contracts; to prevent favoritism, fraud, extravagance, and improvidence" so as to secure "the lowest cost to taxpayers." *Landmark Structures, Inc. v. City Council for Meridian*, 826 So. 2d 746, 749 (Miss. 2002) (quoting *Hemphill Constr. Co. v. City of Laurel*, 760 So. 2d 720, 724 (Miss. 2000)). Because the protections afforded through bidding requirements are so great, we

13

cannot deem H.B. 1671's noncompliance with such requirements to be primarily procedural and minor.

¶32.    Our position regarding the substantive nature of public bidding is not inconsistent with *Bond*. In *Bond*, we found that public bidding requirements did not apply, and, even if they did, the private legislation did nothing to relieve the Board of its obligation to comply with the public bidding statutes. *Bond*, 807 So. 2d at 1218. House Bill 1671, on the other hand, does relieve the City from having to comply with public bidding requirements and therefore renders a substantive change from the general law.

¶33.    In sum, we find that the last sentences of Sections 3 and 4 of H.B. 1671 fail the second prong of the *In Re Validation* test and are therefore unconstitutional. While H.B. 1671 furthers the same object and purpose as the general laws, the differences between H.B. 1671 and Sections 21-17-1 and 31-7-13 of the Mississippi Code are substantive and major.

¶34.    Mississippi Code Section 1-3-77 requires that if any "section, paragraph, sentence, clause, phrase, or any part" of an act be found unconstitutional, the remaining portions shall remain in effect. Miss. Code Ann. § 1-3-77 (Rev. 2005); *see, Lewis v. State*, 765 So. 2d 493, 500 (Miss. 2000). Section 1-3-77 applies unless contrary intent appears on the face of the act. Miss. Code Ann. § 1-3-77 (Rev. 2005). Because H.B. 1671 indicates no contrary intent, we find Section 1-3-77 to be applicable. Accordingly, we sever only the last sentences of Sections 3 and 4 of House Bill 1671. While it remains questionable whether the City's desired goal can be achieved under the remaining, non-offending portions of the bill, the City is not disqualified from continuing to pursue this project or any other private legislation that might be necessary.

14

**CONCLUSION**

¶35. Because we find the last sentences of Sections 3 and 4 of House Bill 1671 unconstitutional, we reverse and render the circuit court's grant of summary judgment to the City of Oxford as to the last sentences of Sections 3 and 4, and affirm the circuit court's grant of summary judgment as to the remaining portions of House Bill 1671.

¶36. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**SMITH, C.J., DIAZ, P.J., EASLEY, CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**

**Appendix**

**House Bill 1671**

AN ACT TO AUTHORIZE THE GOVERNING AUTHORITIES OF THE CITY OF OXFORD, MISSISSIPPI, TO CONSTRUCT, ACQUIRE, MAINTAIN, IMPROVE, EXPAND, ENLARGE, OPERATE AND PROVIDE MUNICIPAL PARKING FACILITIES; TO AUTHORIZE THE GOVERNING AUTHORITIES TO LEASE, RENT, SELL OR EXCHANGE MUNICIPAL PARKING FACILITIES OR THE AIR AND DEVELOPMENT RIGHTS ABOVE MUNICIPAL PARKING FACILITIES; TO AUTHORIZE THE GOVERNING AUTHORITIES TO NEGOTIATE FOR THE CONSTRUCTION, ENLARGEMENT OR EXPANSION OF PARKING FACILITIES UNDER CERTAIN CIRCUMSTANCES; AND FOR RELATED PURPOSES.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI:

SECTION 1.  As used in this act:

(a)  "City" means the City of Oxford, Mississippi.

(b)  "Governing authorities" means the Mayor and Board of Aldermen of the City of Oxford, Mississippi.

(c)  "Parking facility" means any property owned by the City of Oxford, Mississippi, and utilized as a public parking lot.

(d)  "Air and development rights" means the right to use, control and occupy the space above a piece of property.

SECTION 2.  The governing authorities are authorized and empowered, in their discretion, to construct, acquire, maintain, improve, expand, enlarge, operate and provide municipal parking facilities for motor vehicles belonging to members of the general public.  In providing municipal parking facilities as authorized by this act, the provisions of Section 21-37-23 and Section 21-37-25 regarding the establishment and operating of parking facilities and the legislative process for parking facilities shall not apply.

SECTION 3.  The governing authorities are authorized and empowered to lease, rent, sell or exchange parking facilities, or the air and development rights above parking facilities, to any person, firm, association or corporation for commercial or industrial purposes under such terms and conditions and for such periods of time as the governing authorities deem proper.  In conveying parking facilities under the provisions of this act, any provisions of Section 21-17-1 regarding the disposition of municipal property shall not apply.

SECTION 4.  The governing authorities are authorized and empowered, in their discretion, to negotiate with public or private entities for the construction, enlargement or expansion of parking facilities authorized by this act, when the governing authorities find that because of the nature of the project or any portion of the project, or because of special circumstances with respect to the project

or any portion of the project, it would better serve the public interests or more effectively achieve the purposes of this act to enter into such contracts by negotiation. The requirements of the general laws of the State of Mississippi governing the advertisement of bids and the letting of public construction contracts by municipalities shall not apply to transactions authorized by this section.

SECTION 5. The governing authorities, in their discretion, are authorized to convey or grant upon such terms and conditions as the governing authorities deem proper, easements or licenses as may be required for the construction or enlargement of the existing parking facilities and for the utilization of the air and development rights above such parking facilities.

SECTION 6. The governing authorities are authorized and empowered, in their discretion to sell, lease or rent for such terms and period of time as the governing authorities determine appropriate, the air and development rights over parking facilities in exchange for the construction of an enlarged or improved parking facility by the grantee of such rights.

SECTION 7. The governing authorities, in order to provide for the expansion, enlargement or construction of public parking facilities as authorized by this act, are authorized and empowered, in their discretion, to sell, convey or lease the existing parking facilities or portions thereof on such terms and for such periods of time as the governing authorities determine appropriate in order to allow for the construction, enhancement or enlargement of the public parking facilities, or as may be necessary for the development of the air rights above such parking facility.

SECTION 8. In order to convey the air and development rights above parking facilities, the governing authorities shall have requested, received and considered proposals for the development of additional public parking and shall find and determine by resolution that the use of the air and development rights to be sold, conveyed or leased will promote and foster the development and improvement of the city and the civic, social, educational, cultural, moral, economic or industrial welfare thereof.

SECTION 9. This act shall take effect and be in force from and after its passage.